FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

MAY 31 2019

JAMES W. McCORMACK, CLERK
By: _____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

PHILIP PALADE, GREGORY BORSE, and
J. THOMAS SULLIVAN, on behalf of themselves
and all others similarly situated                                    PLAINTIFFS

v.                          CASE NO. 4:19cv379-JM

BOARD OF TRUSTEES OF THE
UNIVERSITY OF ARKANSAS SYSTEM;
ED FRYAR, Ph.D., in his official capacity as Trustee;
STEVE COX, in his official capacity as Trustee;
TOMMY BOYER, in his official capacity as Trustee;
SHEFFIELD NELSON, in his official capacity as Trustee;
C. C. GIBSON, in his official capacity as Trustee;
STEPHEN BROUGHTON, M.D., in his official capacity as Trustee;
KELLY EICHLER, in her official capacity as Trustee;
MORRIL HARRIMAN, in his official capacity as Trustee;
MARK WALDRIP, in his official capacity as Trustee; and,
JOHN GOODSON, in his official capacity as Trustee                    DEFENDANTS

This case assigned to District Judge Moody
and to Magistrate Judge Deere

## COMPLAINT- CLASS ACTION
## FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF

Plaintiffs Philip Palade, Gregory Borse, and J. Thomas Sullivan, on the behalf of themselves and all others similarly situated, in support of their Class-Action Complaint for Declaratory Judgment and Injunctive Relief, state:

### JURISDICTIONAL AND VENUE ALLEGATIONS

1.      The University of Arkansas is a land-grant state university offering statewide educational opportunities ranging from certificate programs to post-doctoral study at twenty-one principal campus units, divisions, or administrative units (the "University of Arkansas System"). The Board of Trustees of the University of Arkansas (the "Board") is the governing body of the University of Arkansas System.

2.      Pursuant to Arkansas Code Annotated 6-64-202, the Board is made a body politic

and corporate, whose powers are restricted by the United States Constitution, Constitution of the State of Arkansas, and the laws of the State of Arkansas. The Board is entrusted with the policy-making decisions for the University of Arkansas System. The Board specifically manages and controls all faculty-related policy for the University of Arkansas System.

      3.     The Board is comprised of ten (10) trustees representing each of Arkansas' four congressional districts:

     a.  Ed Fryar, Ph.D., is a member of the Board. Dr. Fryar is sued in his official capacity as a member of the Board, and he resides in Rogers, Benton County, Arkansas.

     b.  Steve Cox is a member of the Board. Mr. Cox is sued in his official capacity as a member of the Board, and he resides in Jonesboro, Craighead County, Arkansas.

     c.  Tommy Boyer is a member of the Board. Mr. Boyer is sued in his official capacity as a member of the Board, and he resides in Fayetteville, Washington County, Arkansas.

     d.  Sheffield Nelson is a member of the Board. Mr. Boyer is sued in his official capacity as a member of the Board, and he resides in Little Rock, Pulaski County, Arkansas

     e.  C.C. "Cliff" Gibson is a member of the Board. Mr. Gibson is sued in his official capacity as a member of the Board, and he resides in Monticello, Drew County, Arkansas.

     f.  Stephen Broughton, M.D., is a member of the Board. Dr. Broughton is sued in his official capacity as a member of the Board, and he resides Pine Bluff, Jefferson County, Arkansas.

     g.  Kelly Eichler is a member of the Board and currently serves as the Board's

2

Assistant Secretary. Mrs. Eichler is sued in her official capacity as a member of the Board, and she resides in Little Rock, Pulaski County, Arkansas.

h. Morril Harriman is a member of the Board and currently serves as the Board's Secretary. Mr. Harriman is sued in his official capacity as a member of the Board, and he resides in Little Rock, Pulaski County, Arkansas.

i. Mark Waldrip is a member of the Board and currently serves as the Board's Vice Chairman. Mr. Waldrip is sued in his official capacity as a member of the Board, and he resides in Moro, Lee County, Arkansas.

j. John Goodson is a member of the Board and currently serves as the Board's Chairman. Mr. Goodson is sued in his official capacity as a member of the Board, and he resides in Texarkana, Miller County, Arkansas.

4.     Plaintiffs are tenured faculty members employed by the University of Arkansas System and reside in Pulaski County and Drew County, Arkansas. Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on the behalf of themselves and all similarly situated faculty members within the University of Arkansas System. The "Class" includes all individuals who held by appointment tenure-track or tenured positions within the University of Arkansas System on March 29, 2018, when the Board passed and adopted the Revised Policy.

5.     The Class is represented by the following three University of Arkansas faculty members:

a. Philip Palade, Ph.D., is a Professor of Pharmacology and Toxicology at the University of Arkansas for Medical Sciences (UAMS). Dr. Palade has had a distinguished career in biomedical sciences. He obtained his Ph.D. in Biology from

3

the University of Pennsylvania. His first faculty position was in the Department of Physiology and Biophysics at the University of Texas Medical Branch in Galveston where he became a Professor in 1996. He moved to UAMS in 2005. He is the author of 88 publications in peer-reviewed journals, several book chapters and reviews. Dr. Palade has been the recipient of eight prestigious R01 grants and two other grants from the National Institutes of Health totaling nearly $9,000,000, as well as grants from numerous other funding agencies. Dr. Palade is the President of the UAMS chapter of the American Association of University Professors (AAUP).

b. Gregory Borse, Ph.D., is an Associate Professor of English and Philosophy at the University of Arkansas at Monticello where he has taught since 2008. Dr. Borse holds a Ph.D. in English from Louisiana State University and Master of Arts and Bachelor of Arts from the University of Dallas. Dr. Borse is the author of the forthcoming novel *The Incorruptibles* (A&M Publishing 2019), as well as *Other Canons: A Selection of Non-Western Literary Masterpieces* (Fountain Head Press 2012) – a college level textbook for use in World Literature courses. Dr. Borse is past chair of the Arkansas Philological Association's Annual Conference, past chair, vice-chair, and secretary of the University of Arkansas at Monticello Assembly, past editor and peer reviewer of the Arkansas Philological Review, multiple nominee of the Hornaday Excellence in Teaching Award at UAM and past winner of Teacher of the Year at Ivy Tech Community College of Indiana (Wabash Campus). Dr. Borse teaches courses in film, philosophy, literary theory and criticism, and World and English Literature. Dr. Borse also has presented or

4

published on William Faulkner, Jane Austen, W.B. Yeats, Shakespeare, and directors Alfred Hitchcock and Stephen Frears.

c.  J. Thomas Sullivan is a Distinguished Professor of Law at the University of Arkansas at Little Rock Bowen School of Law and has taught at the Bowen School of Law since 1988. He is the Founding Editor of *The Journal of Appellate Practice and Process* which is published by the Bowen School of Law and is licensed to practice law in Arkansas, Texas, New Mexico and Colorado. He has argued before the United States Supreme Court, United States Courts of Appeals for the Fifth, Eighth and Tenth Circuits, the Arkansas Supreme Court, Texas Supreme Court, Texas Court of Criminal Appeals and New Mexico Supreme Court. Mr. Sullivan has represented criminal defendants at trial, on appeal and in the post-conviction process in capital and non-capital criminal proceedings since joining the faculty at the Bowen School of Law.

6.  On March 29, 2018, the Board, for the first time since October 2, 2001, adopted and passed revisions to Policy 405.1, governing faculty promotion, tenure, and annual reviews (hereinafter the "Revised Policy").

7.  When the Board passed the Revised Policy, the Board (a) unilaterally and without the consent of Plaintiffs or the others within the Class made material changes to tenured and tenure-track faculty member's contractual rights as employees of the University of Arkansas System and (b) violated the constitutional rights of Plaintiffs.

8.  Plaintiffs seek to invalidate the Revised Policy with respect to the Class. This lawsuit also requests that the Court enjoin the Board from applying the Revised Policy to the Class as of March 29, 2018, in violation of their constitutional rights.

5

9.     Specifically, Plaintiffs seek entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the rights, power, and other legal relations between the parties as it concerns the Board's adoption of the Revised Policy.  The adoption of the Revised Policy and any subsequent application of the Revised Policy violates not only the Constitutions of the United States of America and the State of Arkansas but also well-established Arkansas legal principles concerning the interpretation and unilateral modification of contracts.  Plaintiffs, in addition to the declaration of rights pursuant to 28 U.S.C. §§ 2201 and 2202, request that the Court enter a permanent injunction pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Revised Policy to the Plaintiffs and awarding the Plaintiffs their attorneys' fees and expert fees in pursuing this class action.

10.     This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343, & 1367.  This Court has the authority to grant (a) declaratory relief under 28 U.S.C. §§ 2201 and 2202 and Federal Rule of Civil Procedure 57 and (b) injunctive relief under 42 U.S.C. §§ 1983 and 1988 and Federal Rule of Civil Procedure 65.  Venue, moreover, is proper in this judicial district pursuant to 28 U.S.C. § 1391.

11.     To avoid confusion and for ease of reference throughout the Complaint, the "Original Policy" shall mean Policy 405.1 revised on October 2, 2001, and in effect through June 30, 2019, and the "Revised Policy" shall mean Policy 405.1 passed and adopted by the Board on March 29, 2018, and which becomes effective on July 1, 2019.

12.     The Original Policy is attached hereto and incorporated herein by reference as Exhibit 1 to this Complaint.  The Revised Policy is attached hereto and incorporated herein by reference as Exhibit 2 to this Complaint.  A redlined comparison of the Original Policy and the

Revised Policy is attached hereto and incorporated herein by reference as Exhibit 3 to this Complaint.

## FACTUAL ALLEGATIONS

13.    Faculty members for the University of Arkansas System are employees who hold a specified academic rank as defined by the Board.  Members of the faculty are generally divided into three groups: tenured, tenure-track, and non-tenure track.

14.    A faculty member who strives to be tenured, which is the right to continuous appointment, may receive an appointment to a tenure-track position that carries with it a probationary period.  As a tenure-track faculty member, the individual is required to complete research or other scholarship in the field of study in which the faculty member is appointed.

15.    After the tenure-track faculty member has completed the probationary period, the individual is either awarded tenure or receives written notice of non-reappointment.

16.    Part of the terms of tenure-track and tenured faculty members' employment with the University of Arkansas System are the policies and procedures promulgated by the Board that govern promotion, tenure, and annual reviews, like the Original Policy and the Revised Policy at issue in this matter.

17.    In September 2017, the University of Arkansas System released an initial draft of proposed revisions to the Original Policy.  In a subsequent undated document, the Office of the General Counsel of the University of Arkansas System (the "Counsel's Office") asserted that the revisions were intended to ensure University policies were appropriate in the light of what the University believes is the changing landscape of higher education.

18.    The proposed revisions to the Original Policy, however, changed the rules and regulations applicable to the promotion, tenure, and annual review for faculty members.  The

proposed revisions, moreover, changed the rules and regulations applicable to dismissal of faculty in the University of Arkansas System.

19.     The initial draft of the revisions to the Original Policy were provided to campus Chancellors with instructions to circulate them on their campuses for feedback.   Feedback regarding the proposed revisions to the Original Policy was provided through January 2018.   The feedback was overwhelmingly negative, and faculty throughout the University of Arkansas System expressed significant reservations regarding the revisions to the Original Policy.

20.     In mid-February 2018, the University of Arkansas System released a new draft of the proposed revisions to the Original Policy, but this time with explanations for some of the revisions in response to the feedback received through January 2018.  The University of Arkansas System's explanations, however, lacked any reasonable identification of how or why the public interest would be served by the proposed revisions or even the purpose behind the revisions in the first instance, except to generically state the revisions were necessary for the changing landscape of higher education and clarity.

21.     A final draft of the revisions to the Original Policy was released on March 19, 2018.

22.     The Board voted and enacted the Revised Policy on March 29, 2018, at the Board's meeting in Monticello, on the campus of the University of Arkansas at Monticello, one of the sister institutions of the University of Arkansas System.  The Revised Policy becomes effective on July 1, 2019.

23.     By its terms, the Revised Policy purports to apply to all faculty employed by the University of Arkansas System, including those who obtained tenure or entered the tenure-track prior to the adoption of the Revised Policy.  And, in a memorandum released in November of 2017 that addressed various questions regarding the amendments, the Counsel's Office expressly stated

8

that the Revised Policy is intended to apply to all faculty.

24.    When the Board passed the Revised Policy, the Board did so with almost no faculty support and without any objective research or contemporaneous statements of reason in support of the Revised Policy.

25.    The Board, likewise, has not provided any public interest justification that is served by the Revised Policy or even how the Revised Policy will serve the public better than the Original Policy it is supplanting.

26.    Indeed, the generic reasoning provided by the Board – the revisions were necessary for the changing landscape of higher education and clarity – simply crumbles under even a cursory review of the revisions made to the Original Policy.

### *The Revisions to Board Policy 405.1*

27.    "Tenure" in the Original Policy and Revised Policy is defined as the "right of continuous appointment."

28.    Both versions of the Policy explain that tenure is "awarded by the President to eligible members of the faculty upon successful completion by each of a probationary period."

29.    Both versions of the Policy also state that "[t]he granting of tenure implies that the individual has completed successfully his or her probationary period and has become a permanent member of the University community.  As such, he or she acquires additional procedural rights in the event that dismissal proceedings may be brought against him or her."

30.    The definition of "cause," has also been changed in the Revised Policy, however, and unquestionably expands the grounds upon which a faculty member may be fired for "cause."

31.    "Cause" in the Original Policy is defined as:

[C]onduct which demonstrates that the faculty member lacks the ability or willingness to perform his or her duties or to fulfill his or her responsibilities to the

9

University.

.32.    In contrast, the Revised Policy defines "cause" as:

[C]onduct that demonstrates the faculty member lacks the willingness or ability to perform duties or responsibilities to the University, **or that otherwise serves as the basis for disciplinary action**.

(Emphasis added.)

33.    The additional language in the Revised Policy – **"or that otherwise serves as the basis for disciplinary action"** – exponentially expands the scope of the definition of "cause" for dismissal of the faculty member and modifies the faculty member's contract with the Board without the faculty member's consent.

34.    Likewise, the definition of "cause" in the Original Policy provides as follows:

Examples of such conduct include (but are not limited to) incompetence, neglect of duty, intellectual dishonesty and moral turpitude.

35.    These four "examples" of conduct that may be the bases for termination for cause in the Original Policy all reflect extreme problems with a faculty member and are limited in their nature and scope.

36.    The definition of "cause" in the Revised Policy, in contrast to the Original Policy's four "examples," offers a list of 12 non-exclusive "grounds" that are more than mere examples of conduct but broad and vague descriptions of conduct that constitute the necessary justification for any administrator to dismiss a faculty member for "cause."

37.    The 12 "grounds" for terminating a faculty member for "cause" in the Revised Policy are:

(1) unsatisfactory performance . . . concerning annual reviews; (2) professional dishonesty or plagiarism; (3) discrimination, including harassment or retaliation, prohibited by law or university policy; (4) unethical conduct related to fitness to engage in teaching, research, service/outreach and/or administration, or otherwise related to the faculty member's employment or public employment; (5) misuse of

appointment or authority to exploit others; (6) theft or intentional misuse of property; (7) incompetence or a mental incapacity that prevents a faculty member from fulfilling his or her job responsibilities; (8) job abandonment; (9) a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment; (10) refusal to perform reasonable duties; (11) threats or acts of violence or retaliatory conduct; or (12) violation of University policy, or state or federal law, substantially related to performance of faculty responsibilities or fitness to serve the University.

38.     Although the "examples" of conduct in the Original Policy are consistent with some of the "grounds" for termination listed in the Revised Policy, not all of the "grounds" in the Revised Policy are consistent with the "examples" in the Original Policy.

39.     The Revised Policy makes quantitative changes to the definition of "cause" by expanding the list of "grounds" that justify termination. For instance, faculty purportedly may be dismissed for "cause" under the Revised Policy for "unethical conduct, . . . a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment [,]" and for "unsatisfactory performance . . . concerning annual reviews."

40.     Each of the "grounds" in the Revised Policy listed in the previous paragraph sets a far lower standard for termination of a faculty member than any of the "examples" in the Original Policy. Accordingly, the Revised Policy also makes qualitative changes by including new types of "grounds" that constitute less serious justifications for dismissal.

41.     A fundamental principle of interpretation that applies to the Revised Policy is that, when a general term is coupled with specific illustrations, those illustrations play a central role in defining the scope of the general term. This means that a general word or phrase *changes meaning* depending on the specific illustration included with the general word or phrase. Accordingly, the general "cause" standard in the Original Policy — "lacks the willingness or ability to perform duties or responsibilities" — now plainly has a much broader meaning under the Revised Policy because of the expansive, non-exclusive list of "grounds" associated with that general phrase.

11

***Policy Interests Favor Tenure Protections***

42.     The concept of tenure is "the product of historical experience and long debate. Its

adoption is not merely a reflection of solicitude for the staffs of academic institutions, but of a

concern for the general welfare by providing for the benefits of uninhibited scholarship and its full

dissemination. The security provided therefore by the consensus of learned authority should not

be indifferently regarded. **It should be vigilantly protected by a court of equity**…[.]" AAUP *v.*

*Bloomfield*, 322 A.2d 846, 853-54 (N.J. Super. 1974) (emphasis added).

43.     Tenure serves an essential institutional goal of providing academic freedom and

economic security to an institution's staff; both of which are necessary if an institution is

committed to fulfilling the institution's obligations to its students, the taxpayers, and society in

general. Stated differently, tenure is a common expectation of employment in academia and has

been instituted to protect against the potential evils in state and/or local government of arbitrary or

politically-motivated dismissals or discipline.

44.     Indeed, without tenure, a person of academic potential would be less likely to

intentionally invest (1) thousands of hours and dollars into years of specialized study necessary to

secure a degree, such as a Ph.D. and (2) several additional years in probationary status at a college

or university seeking tenure – wherein one has to further prove his or her academic excellence and

responsibility – since even the slightest disagreement with a superior or co-worker could provide

"cause" for termination.

45.     Chief Justice Warren explained the essential nature of tenure in *Sweezy v. New*

*Hampshire*, 354 U.S. 234, 250 (1957), stating:

> The essentiality of freedom in the community of American universities is almost
> self-evident. No one should underestimate the vital role in a democracy that is
> played by those who guide and train our youth. To impose any strait jacket upon
> the intellectual leaders in our colleges and universities would imperil the future of

12

our Nation. No field of education is so thoroughly comprehended by man that new discoveries cannot yet be made. * * * Scholarship cannot flourish in an atmosphere of suspicion and distrust. Teachers and students must always remain free to inquire, to study and to evaluate, to gain new maturity and understanding; otherwise our civilization will stagnate and die.

46.     The educational soundness of tenure also has been confirmed by empirical study. *See* Ronald Ehrenberg & Liang Zhang, *Do Tenure and Tenure-Track Faculty Matter?*, 40 J. HUMAN RESOURCES 647 (2005) (concluding that the increased use of part-time and non-tenure track faculty is associated with higher drop-out rates and lower rates of graduation of students, especially at public institutions); J. Stephen Ferris and Michael McKee, *Matching Candidates With Academic Teams: A Case For Academic Tenure*, 25 INT'L REV. L. & ECON. 290, 309 (2005) (Tenure and the rigor of the tenure policy is "a positive predictor of [academic] department performance and output.").

47.     The Revised Policy undermines a major tenet of tenure, which is that the tenured faculty member will be terminated only as a last resort and only after all other avenues for redress are exhausted. The Revised Policy does this by eliminating the Original Policy's restrictions on termination for "cause" – *i.e.*, a narrow set of extreme examples that justify termination for "cause" – and replacing those protections with nearly limitless administrative authority on the part of the Board and University of Arkansas System administrators to terminate or discipline tenured and tenured-track faculty.

48.     The Revised Policy materially changes the meaning of the Original Policy and does not merely 'clarify' it, as has been publicly claimed by the Board as justification for the Revised Policy.

49.     By obliterating the fundamental safeguards provided by tenure, the Revised Policy puts all University of Arkansas System faculty at a much greater risk of being terminated,

disciplined, or otherwise harassed based on an administrator's or trustee's disapproval of the content of a faculty member's teaching, research, service, or even statements made completely outside the campus setting.

50.     Moreover, termination and discipline for "cause" are the very heart of tenure protection. Accordingly, the changes made in the Revised Policy are a fundamental modification to faculty employment contracts. And the "protections" in the Revised Policy are wholly incapable of assuring fairness and regularity or dispelling the chilling effect that the threat of discretionary and indiscriminate dismissal or other forms of discipline casts over academic pursuits.

## CLASS ALLEGATIONS

51.     Under Federal Rule of Civil Procedure 23(a), "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

52.     Under Federal Rule of Civil Procedure 23(b), in addition to the requirements found in Rule 23(a), a class may be maintained if (1) separate prosecutions by difference class members would create a risk of inconsistent adjudications or adjudications that, as a practical matter, would be dispositive of other class members' interests, (2) the relief sought is appropriate for the class as a whole and it is relief the party opponent refuses to provide, or (3) the court determines that (a) the questions of law and/or fact common to the class predominate over any questions affecting only individual members and (b) the class is superior to other available methods of obtaining the relief sought by the class.

53.     Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on the behalf of themselves and all similarly situated faculty members within the University of Arkansas System.

54.     The "Class" is defined as follows: All individuals who held by appointment tenure-track or tenured positions within the University of Arkansas System on March 29, 2018, when the Board passed and adopted the Revised Policy.

55.     The exact number of the members of the Class is unknown at this time, but the number is estimated to be in the hundreds, making the class so numerous that joinder of all members is impracticable.

56.     As demonstrated, there are questions of law or fact common to the Class that predominate over any questions affecting only individual members, and Plaintiffs' claims are typical of those of the members of the Class.

57.     Plaintiffs will fairly and adequately protect the interest of the Class and have retained counsel that is experienced in litigation of complex matters. Plaintiffs have no interest which conflicts with those of the Class.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

59.     No members of the Class have a substantial interest in individually controlling the prosecution of a separate action. The inability to recover damages for the unconstitutional action taken by the Board as a result of sovereign immunity makes it virtually impossible for the individual Class members to effectively redress the wrongs done to them because of the burden and expense of individual prosecution of these violations.

60.     The prerequisites to maintaining a class action for injunctive and equitable relief

15

are met as the Board has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class ripe for adjudication by this Court.

61.    The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for the Board.  For example, one court may enjoin the Board from implementing the Revised Policy whereas another court may not.  Individual actions, moreover, could be dispositive of the interest of the other Class members if the other Class members are not made parties to such action.

62.    The Board's conduct is applicable to the Class as a whole, and Plaintiffs seek declaratory and equitable remedies with respect to the Class as a whole.

63.    As such, the Board's unconstitutional actions in adopting and passing the Revised Policy and making the Revised Policy retroactively applicable to all faculty members in the University of Arkansas System without their consent makes declaratory and injunctive relief appropriate with respect to the Class as a whole.

## COUNT I – DECLARATORY JUDGMENT AND INJUNCTIVE RELEIF
### (UNITED STATES CONSTITUTION – CONTRACTS CLAUSE)

64.    Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and other legal relations with the Board as it concerns the Revised Policy.  Plaintiffs also seek the entry of an injunction pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

65.    Under the Constitution of the United State of America, "[n]o State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts[.]" U.S. Const. art. I, § 10, cl. 1 (the "Contracts Clause").

66.    "Bills of attainder, ex-post-facto laws, and laws impairing the obligation of

16

contracts, are contrary to the first principles of the social compact, and to every principle of sound legislation. The two former are expressly prohibited by the declarations prefixed to some of the State constitutions, and all of them are prohibited by the spirit and scope of these fundamental charters. Our own experience has taught us, nevertheless, that additional fences against these dangers ought not to be omitted. Very properly, therefore, have the convention added this constitutional bulwark in favor of personal security and private rights; and I am much deceived if they have not, in so doing, as faithfully consulted the genuine sentiments as the undoubted interests of their constituents. The sober people of America are weary of the fluctuating policy which has directed the public councils. They have seen with regret and indignation that sudden changes and legislative interferences, in cases affecting personal rights, become jobs in the hands of enterprising and influential speculators, and snares to the more-industrious and less informed part of the community. They have seen, too, that one legislative interference is but the first link of a long chain of repetitions, every subsequent interference being naturally produced by the effects of the preceding. They very rightly infer, therefore, that some thorough reform is wanting, which will banish speculations on public measures, inspire a general prudence and industry, and give a regular course to the business of society." James Madison, *Federalist Paper No. 44*, RESTRICTIONS ON THE AUTHORITY OF THE SEVERAL STATES (January 25, 1788).

67.    "A three-part test determines whether a [law] violates the Contracts Clause." *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 436 (8th Cir. 2007).

68.    The first part is "whether the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships." *Id.* (internal quotation marks omitted). "This question 'has three components: [1] whether there is a contractual relationship, [2] whether a change in law impairs that contractual relationship, and [3] whether the impairment is

substantial.'" *Id.* (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).

69. The second part is "whether the state has a significant and legitimate public purpose behind the regulation." *Id.* at 438 (internal quotation marks omitted). And, the third part is "whether the adjustment of the rights and responsibilities of contracting parties is based upon reasonable conditions and is of a character appropriate to the public purpose justifying the adoption." *Id.* at 439 (internal quotation marks omitted).

70. The Revised Policy violates the Contracts Clause of the United States Constitution, and Plaintiffs request that the Court enter a declaratory judgment in favor of the Class.

71. A contractual relationship exists, and the Revised Policy operates as a substantial impairment to the contractual relationship between the Class and the Board. The expansion of the list of "grounds" for termination for "cause" fundamentally alters the Class's contractual relationship with the Board and undermines the very purpose of that contractual relationship, as well as the Class's reasonable expectations of continuous appointment. In other words, the impairment is substantial.

72. The Board does not have any legitimate public purpose to justify the Revised Policy. Deference to the Board's decision to adopt the Revised Policy is not appropriate because affirming the Revised Policy is in the Board's self-interest.

73. The Revised Policy is a consolidation of administrative power to insulate the Board from lawsuits and expand qualified immunity while doing nothing to further protect the rights of the Class's members – the other parties to the contract the Board has unilaterally modified in violation of the U.S. Constitution.

74. The Revised Policy fails to adjust the rights and responsibilities of the Class and the Board based on any reasonable condition.

75.     Inherent in a tenure system is certain inflexibility in firing decisions by the employing academic institution. Upon adopting such a system and granting tenure to employees, the Board is prohibited from impairing its contractual obligations to the Class by granting itself greatly expanded power to terminate or discipline for "cause" faculty who were tenured or on the tenure-track prior to the adoption of the Revised Policy.

76.     The Board's actions effectively destroy the concept of tenure by enabling the University of Arkansas System to terminate faculty on almost any ground through the application of the overly-broad and ubiquitous "grounds" for dismissal listed in the Revised Policy.

77.     Further, the Revised Policy provides an avenue to endlessly reduce faculty member salaries as retaliation for failure to comply with the much broader Revised Policy.

78.     For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates the Contracts Clause of the United States Constitution because it substantially impairs the contractual relationship between the Class and the Board without a legitimate purpose to justify the revisions.

79.     For these reasons, Plaintiffs also submit that the Class is entitled to an injunction, enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy violates the Class's rights pursuant to the Contracts Clause of the United States Constitution.

80.     Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to 42 U.S.C. §§ 1983 and 1988 and Ark. Code Ann. §§ 16-22-308 and 16-123-105.

## COUNT II – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (UNITED STATES CONSTITUTION – DUE PROCESS VIOLATIONS)

81.     Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and other legal relations with the Board as it concerns the Revised Policy. Plaintiffs also seek the entry of an injunction pursuant to 42 U.S.C.

§§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

82.     In *Arkansas Dept. of Human Servs. v. Walter*, 315 Ark. 204, 210, 866 S.W.2d 823, 825 (1993), the Arkansas Supreme Court held "that statutes can be construed to operate retroactively so long as they do not disturb contractual or vested rights or create new obligations." The Court also held "that it would violate due process to disturb vested rights or contractual rights." *Id.*

83.     The contractual and vested rights of the Class 'are not merely the generic right to termination only for "cause." It is the right to termination only for "cause" *as set forth in the tenure agreements between the institution and the individual Class members*. If that were not the case, then the Board could change the definition of "cause" at its discretion to eviscerate tenure protections for existing faculty, which is what the Board has attempted to do with the Revised Policy in this matter to the harm and detriment of the Class.

84.     The Revised Policy adopted by the Board violates the Class's due process rights because the Revised Policy retroactively disturbs the contractual and property rights and contractual relationship between the parties.

85.     For example, the Revised Policy adopted by the Board retroactively allows the Board and institutional administrators to use annual reviews of the individual Class members to be the basis for termination, which was not allowed under the Original Policy.

86.     In addition, the Revised Policy adopted by the Board retroactively provides numerous additional "grounds" that an administrator may use to justify termination of Class members. Many of these grounds concern substantially less problematic activity than the examples listed in the Original Policy.

87.     The retroactive nature of the Revised Policy violates the Class members' rights

pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

88.     If the Revised Policy is allowed to become effective, it will cause irreparable harm to the Class by fundamentally weakening the Class's contractual and vested rights.  Indeed, the Revised Policy will eviscerate the contractual and vested rights of the Class.

89.     In sum, the Board may not retroactively interfere with vested rights of the Class as it has done here without also violating the Class members' substantive due process rights.

90.     For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates the Class's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

91.     For these reasons, Plaintiffs also submit that the Class is entitled to an injunction, enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy violates the Class's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution.

92.     Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to 42 U.S.C. §§ 1983 and 1988 and Ark. Code Ann. §§ 16-22-308 and 16-123-105.

## COUNT III – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## (ARKANSAS CONSTITUTION – CONTRACTS CLAUSE)

93.     Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and the other legal relations between the parties as it concerns the Board's revisions to the Policy.  Plaintiffs also seek the entry of an injunction pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

94.     Under the Arkansas Constitution, "[n]o bill of attainder, ex post facto law, or law impairing the obligation of contracts shall ever be passed[.]" Ark. Const. Art. II, § 17.

95.    In short, like the United States Constitution, Arkansas prohibits the state and its instrumentalities from undermining contracts to which they are parties and contracts between private parties.

96.    The Class is entitled to a declaratory judgment that the Revised Policy violates Article II, Section 17 of the Arkansas Constitution.

97.    The Revised Policy operates as a substantial impairment to the contractual relationship between the Class and the University of Arkansas System. The expansion of the list of "grounds" for termination for "cause" fundamentally alters the Class's contractual relationship with the Board and undermines the very purpose of that contractual relationship, as well as the Class's reasonable expectations of continuous appointment.

98.    The Board does not have any legitimate public purpose to justify the Revised Policy. Deference to the Board's decision to adopt the Revised Policy is not appropriate because affirming the Revised Policy is in the Board's self-interest. The Revised Policy is a consolidation of administrative power being used to insulate the Board from lawsuits and expand qualified immunity at the expense of the rights of the Class members.

99.    The Revised Policy fails to adjust the rights and responsibilities of the Class and the Board based on any reasonable condition.

100.    Inherent in a tenure system is certain inflexibility in firing decisions by the employing academic institution. Upon adopting such a system and granting tenure to employees, the Board is prohibited from impairing its contractual obligations to the Class by granting itself greatly expanded power to terminate or discipline for "cause" faculty who were tenured or on the tenure-track prior to the adoption of the Revised Policy.

101.    The Board's actions effectively destroy the concept of tenure by enabling the

22

University of Arkansas System to terminate faculty on almost any ground through the application
of the overly-broad and ubiquitous "grounds" for dismissal listed in the Revised Policy.

102.    For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment
that the Revised Policy violates Article 2, Section 17 of the Arkansas Constitution because it
substantially impairs the contractual relationship between the Class and the Board without a
legitimate public purpose to justify the revisions.

103.    For these reasons, Plaintiffs also submit the Class is entitled to an injunction,
enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy
violates Article 2, Section 17 of the Arkansas Constitution by substantially impairing the
contractual relationship between the Class and the Board without a legitimate public purpose to
justify the revisions.

104.    Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to Ark. Code
Ann. §§ 16-22-308 and 16-123-105.

## COUNT IV – DECLARATORY JUDGMENT
## (ARKANSAS CONTRACT LAW)

105.    Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201
and 2202, declaring the Class's rights, power, and the other legal relations between the parties as
it concerns the Board's revisions to the Policy.

106.    Under Arkansas law, both parties to a contract must consent to any changes to that
contract. *See Bancorpsouth Bank v. Shields*, 2011 Ark. 503, 8, 385 S.W.3d 805, 809. Indeed,
"[f]undamental principles of contract law require that the parties to a contract agree to any
modification of that contract." *Id.* "Those parties must manifest assent to the modification of a
contract and to the particular terms of such modification." *Id.*

107.    "[A] subsequent agreement that purports to modify or change an existing agreement

23

must be supported by consideration other than the consideration involved in the existing agreement." *Worden v. Crow*, 2013 Ark. App. 234, 6, 427 S.W.3d 143, 147.

108.   "Where there is no new consideration presented for the bargained for item, the new agreement is void and of no effect for lack of mutuality of consideration." *Id.* at 6-7, 427 S.W.3d at 147-48.

109.   The Revised Policy constitutes modifications to the Board's contracts with the Class without the consent of the Class members.

110.   The Revised Policy materially changes the definition of "cause" under which an administrator may seek to dismiss a Class member.

111.   The Revised Policy materially changes the "grounds" for which an administrator may seek to dismiss a Class member contained in the definition of "cause."

112.   The Revised Policy materially changes the rules and regulations governing for-cause dismissals for Class members.

113.   The Revised Policy materially changes the rules and regulations governing compensation, and its reduction, for Class members.

114.   The Board is required to obtain the manifest assent of the Class before revisions to the Policy may be validly enacted and applied to the Class members.

115.   In sum, the Revised Policy changes the contractual relationship that the Class members have with the Board by greatly expanding the authority of the Board to terminate or otherwise discipline the Class members for "cause" in comparison to the Original Policy.

116.   Plaintiffs seek a declaratory judgment for the Class that, because the Class members did not manifest their assent to the Revised Policy, the Revised Policy constitutes an impermissible modification of the Board's contract with the Class members and may not be applied to the Class

members.

117.    For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates Arkansas state law because the Board unilaterally altered the terms of the Class's contracts without the assent of the Class, which is as much a requisite element in effecting a contractual modification as it is in the initial creation of the contract.

118.    Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to Ark. Code Ann. §§ 16-22-308 and 16-123-105.

## COUNT V – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF
## (UNITED STATES CONSTITUTIONAL – FIRST AMENDMENT VIOLATION)

119.    Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and the other legal relations between the parties as it concerns the Board's revisions to the Policy.  Plaintiffs also seek the entry of an injunction pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

120.    The First Amendment is made applicable to the states through the Fourteenth Amendment.

121.    The Revised Policy greatly expands the grounds for a Class member to be fired, which facially and as applied has a serious impact on the Class members' right to speak freely at his or her respective academic institution.

122.    Plaintiffs and other Class members have already suffered from a chilling effect after the passage of the Revised Policy, including being extremely cautious of what is said in class and what topics may be discussed openly in class without fear of termination under the Revised Policy. This chilling effect caused by the Revised Policy is a limitation on and violation of Plaintiffs' and the Class's rights under the First Amendment.

123.   For example, Professor Sullivan and other faculty members who would like to speak out on matters of university policy and other matters of public concern currently feel the suffocating and chilling effect of the new rule and are being more cautious with their speech in the classroom and to colleagues for fear of retaliatory termination grounded in the broad Revised Policy.

124.   Another example of the unrest and fear lies within the UAMS faculty. Highly accomplished researchers and educators such as Dr. Palade are fearful of salary cuts due to the amount of leeway provided by the Revised Policy if they resist problematic university action.

125.   The ability of a faculty member to speak openly and freely in the academic setting concerning politics, political decisions and the associated policy implications, and controversial issues, topics, and ideas without fear of termination is protected by the First Amendment.

126.   For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates their First Amendment rights.

127.   For these reasons, Plaintiffs also submit that the Class is entitled to an injunction, enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy violates the Class's rights pursuant to the First and Fourteenth Amendments to the United States Constitution.

128.   Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to Ark. Code Ann. §§ 16-22-308 and 16-123-105.

## COUNT VI – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (ARKANSAS CONSTITUTION – FREE COMMUNICATION VIOLATION)

129.   Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and the other legal relations between the parties as it concerns the Board's revisions to the Policy. Plaintiffs also seek the entry of an injunction

pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

130. "The free communication of thoughts and opinions, is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects, being responsible for the abuse of such right." Ark. Const., Art. 2, § 6.

131. Arkansas's Constitution regarding free communication is more expansive and protects more than its federal counterpart.

132. The Revised Policy greatly expands the grounds for a Class member to be fired, which facially and as applied has a serious impact on the Class members' right to freely communicate thoughts and opinions at his or her respective academic institution.

133. Plaintiffs and other Class members have already suffered from a chilling effect after the passage of the Revised Policy, including being extremely cautious of what is said in class and what topics and thoughts may be discussed openly in class without fear of termination under the Revised Policy. This chilling effect caused by the Revised Policy is a limitation on and violation of Plaintiffs' and the Class's rights under the Article 2, § 6 of the Arkansas Constitution.

134. The ability of a faculty member to communicate openly and freely in the academic setting concerning politics, political decisions and the associated policy implications, and controversial issues, topics, and ideas without fear of termination is protected by the Arkansas Constitution.

135. For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates their rights pursuant to Article 2, § 6 of the Arkansas Constitution.

136. For these reasons, Plaintiffs also submit that the Class is entitled to an injunction, enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy

violates the Class's rights pursuant to Article 2, § 6 of the Arkansas Constitution.

137. Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to Ark. Code Ann. §§ 16-22-308 and 16-123-105.

### COUNT VII – DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF (UNITED STATES CONSTITUTION – ACADEMIC FREEDOM VIOLATION)

138. Plaintiffs seek the entry of a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, declaring the Class's rights, power, and the other legal relations between the parties as it concerns the Board's revisions to the Policy. Plaintiffs also seek the entry of an injunction pursuant to 42 U.S.C. §§ 1983 and 1988, enjoining the Board from applying the Policy to the Class members.

139. The First Amendment is made applicable to the states through the Fourteenth Amendment. The Court has made great efforts to protect faculty members from their academic institutions suffocating their free speech rights by carving out specific protection for academic freedom under the First Amendment.

140. Academic freedom is "the right (esp. of a university teacher) to speak freely about political or ideological issues without fear of loss of position or other reprisal." ACADEMIC FREEDOM, Black's Law Dictionary (10th ed. 2014).

141. The drafters of the American Association of University Professor's 1915 *Declaration of Principles on Academic Freedom and Academic Tenure* explained that "University teachers should be understood to be, with respect to the conclusions reached and expressed by them, no more subject to the control of the trustees than are judges subject to the control of the president."

142. Academic freedom is often protected as part of "academic custom" or "academic common law." Federal appeals courts, for instance, have found that jointly issued statements of

28

the AAUP and other higher education organizations, such as the *1940 Statement*, "represent widely shared norms within the academic community" and, therefore, may be legally relied upon. *Browzin v. Catholic University of America*, 527 F.2d 843, 848 n. 8 (D.C. Cir. 1975); *see also Roemer v. Board of Public Works of Maryland*, 426 U.S. 736 (1976) (relying on *1940 Statement*'s definition of academic freedom); *Tilton v. Richardson*, 403 U.S. 672 (1971) (same); *Bason v. American University*, 414 A.2d 522 (D.C. 1980) (noting the "customs and practices of the university").

143. The United States Supreme Court also has recognized that the doctrine of academic freedom has a constitutional dimension and is closely associated with, or similar to, the rights of free expression guaranteed by the Constitution.

144. "Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." *Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967) (citations omitted).

145. Indeed, academic freedom includes a right of expression that is not subject to the control of those who run a university. *Sweezy v. New Hampshire*, 354 U.S. 234, 250 (1957).

146. During the McCarthy era of the 1950s, the U.S. Supreme Court began to develop the notion of constitutional academic freedom. Those cases serve as persuasive authority that the Arkansas Constitution offers at least as broad of a constitutional right.

147. Thirty-nine states, including Arkansas, protect freedom of speech in comprehensive terms that exceed the limitations on governmental action contained in the First Amendment. *Compare* U.S. Constitution's Free Speech Right ("Congress shall make no law . . . abridging the

freedom of speech") *with* the Arkansas Constitution's Free Speech Right ("The free communication of thoughts and opinions, is one of the invaluable rights of man; and all persons may freely write and publish their sentiments on all subjects").

148.    The University of Arkansas and various subdivisions thereof further bestowed additional and overlapping academic freedom rights via school policy to faculty members, which are also legally binding. *See, e.g., Greene v. Howard University*, 412 F.2d 1128 (D.C. Cir. 1969) (ruling faculty handbook "govern[ed] the relationship between faculty members and the university"). *See also* Jim Jackson, *Express and Implied Contractual Rights to Academic Freedom in the United States*, 22 HAMLINE L. REV. 467 (Winter 1999).

149.    The Class members have tenure and academic freedom to ensure a robust exchange of ideas, free from censorship and retaliation by authority. Tenure and academic freedom exist specifically to protect the Class members from interference by the Board.

150.    The Board's action in passing the Revised Policy effectively destroys the concept of tenure and academic freedom by enabling the University of Arkansas System to terminate faculty on almost any ground through the application of the overly-broad and ubiquitous "grounds" for dismissal listed in the Revised Policy.

151.    The Revised Policy's gutting of tenure and academic freedom protections is a direct assault on the concept of academic freedom.

152.    The core of the Revised Policy, moreover, strikes at the heart of tenure and academic freedom and is nothing more than a veiled attempt to take away vested rights, to chill debate, and to silence dissent amongst the Class members.

153.    For these reasons, Plaintiffs submit the Class is entitled to a declaratory judgment that the Revised Policy violates the Class members' constitutional right to academic freedom

pursuant to the United States Constitution and Arkansas Constitution.

154.    For these reasons, Plaintiffs also submit that the Class is entitled to an injunction, enjoining the Board from applying the Revised Policy to the Class, because the Revised Policy violates the Class members' constitutional right to academic freedom pursuant to the United States Constitution and Arkansas Constitution.

155.    Plaintiffs seek their attorneys' fees in prosecuting this action pursuant to 42 U.S.C. §§ 1983 and 1988 and Ark. Code Ann. §§ 16-22-308 and 16-123-105.

**WHEREFORE,** Plaintiffs respectfully request that the Court enter judgment in favor of Plaintiffs, and the Class of all those similarly situated, against the Board of Trustees for the University of Arkansas, and award the following relief (a) certify the Class, appoint Plaintiffs as representatives of the Class, and approve Plaintiffs' undersigned counsel as counsel for the class; (b) declare that the Board is financially responsible for notifying the Class of the pendency of the suit; (c) declare the Revised Policy violates the Contracts Clause of the United States Constitution because it substantially impairs the contractual relationship between the Class and the Board without a legitimate public purpose to justify the revisions; (d) enjoin the Board from applying the Revised Policy to the Class because it substantially impairs the contractual relationship between the Class and the Board without a legitimate public purpose to justify the revisions; (e) declare the Revised Policy violates the Class's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; (f) enjoin the Board from applying the Revised Policy to the Class because the Revised Policy violates the Class's due process rights pursuant to the Fifth and Fourteenth Amendments to the United States Constitution; (g) declare that the Revised Policy violates Article 2, Section 17 of the Arkansas Constitution because it substantially impairs the contractual relationship between the Class and the Board without a legitimate public

31

purpose to justify the revisions; (h) enjoin the Board from applying the Revised Policy to the Class because the Revised Policy violates Article 2, Section 17 of the Arkansas Constitution and substantially impairs the contractual relationship between the Class and the Board without a legitimate public purpose to justify the revisions; (i) declare that, because the Class members did not manifest their assent to the Revised Policy, the Revised Policy constitutes an impermissible modification of the Board's contract with the Class members and is "void and of no effect" as applied to the Class; (j) declare that the Revised Policy violates the Class's rights pursuant to the First and Fourteenth Amendments to the United States Constitution; (k) enjoin the Board from applying the Revised Policy to the Class because the Revised Policy violates the Class's rights pursuant to the First and Fourteenth Amendments to the United States Constitution; (l) declare that Revised Policy violates the Class's rights pursuant to Article 2, § 6 of the Arkansas Constitution; (m) enjoin the Board from applying the Revised Policy to the Class because the Revised Policy violates the Class's rights pursuant to Article 2, § 6 of the Arkansas Constitution; (n) declare that the Revised Policy violates the Class members' constitutional right to academic freedom pursuant to the United States Constitution and Arkansas Constitution; (o) enjoin the Board from applying the Revised Policy to the Class because the Revised Policy violates the Class members' constitutional right to academic freedom pursuant to the United States Constitution and Arkansas Constitution; (p) award Plaintiffs their costs and reasonable attorneys' fees pursuant to 42 U.S.C. §§ 1983 and 1988 and Ark. Code Ann. §§ 16-22-308 and 16-123-105; and (q) grant Plaintiffs all other relief as this Court deems just and proper.

Respectfully submitted,


Joseph W. Price II
Ark. Bar No. 2007168
Brittany S. Ford
Ark. Bar No. 2018102
Attorneys for Plaintiffs
QUATTLEBAUM, GROOMS & TULL PLLC
111 Center Street, Suite 1900
Little Rock, Arkansas 72201
Telephone:    (501) 379-1700
Facsimile:    (501) 379-1701
Email:        jprice@qgtlaw.com
              bford@qgtlaw.com

BOARD POLICY 405.1

APPOINTMENTS, PROMOTION, TENURE, NON-REAPPOINTMENT, AND DISMISSAL OF FACULTY

This policy, adopted by the Board of Trustees on February 8, 1980, to become effective on July 1, 1980, supersedes all existing policies concerning appointments, promotion, tenure, non-reappointment, and dismissal of faculty (specifically, Administrative Memorandum No. 43, dated August 31, 1962; Universitywide Administrative Memorandum 421.1, dated December 6, 1976; Universitywide Administrative Memorandum 450.1, dated November 17, 1975; and Board Policy 405.1, dated September 1, 1962, and revised). Nevertheless, an employee of the University of Arkansas who held the rank of instructor prior to the effective date of this policy is eligible for tenure in accordance with Section II.A.(1-4) of Board Policy 405.1 dated September 1, 1962, and revised. The Board of Trustees has the right to amend any portion of this policy at any time in the future.

Copies of this statement of policies shall be kept by the dean of each college or school and by each department head or chairperson or other appropriate official and shall be included without change or inter-lineation in the Faculty Handbook for each campus.  Care shall be taken to insure that each faculty member is familiar with its contents, and the department chairperson or other appropriate official shall supply a copy to each new member.


I.      Definition of Terms

        For purposes of this policy, the following definitions shall apply:

        Appointment - An appointment is employment by written contract ("Notice of Appointment") by the Board of Trustees of an individual in a given capacity for a specified time period at a stated salary. An appointment is valid only when the appointment form is approved and signed by the President of the University or the President's designee in accordance with authority delegated by the Board of Trustees, and the Notice of Appointment is signed by the individual being appointed and returned to the specified University official.

        Dismissal -Dismissal is severance from employment for cause after administrative due process as specified in Section IV-C.   Non-reappointment is not a dismissal (see further).

        Faculty - Faculty are employees who hold academic rank of lecturer, master lecturer, assistant instructor, instructor, assistant professor, associate professor, professor, distinguished professor, University professor, or one of the above titles modified by clinical, research, adjunct, visiting, executive in residence, or emeritus, e.g., clinical professor, adjunct assistant professor.

        Individuals holding the following non-teaching titles will also receive faculty rank, the highest rank for each title being as indicated. Both the title and the academic rank will be stated in the appointment.


EXHIBIT 1

| Instructional and Research Ranks | Library | Cooperative Extension Service* | Instructional Development | Museum |
|---|---|---|---|---|
| University Professor, Distinguished Professor, Professor | Director of Libraries, Librarian | Extension Specialist IV | Instructional Development Specialist II | Curator |
| Associate Professor | Associate Librarian | Extension Specialist III | Instructional Development Specialist I | Associate Curator |
| Assistant Professor | Assistant Librarian | Extension Specialist II | | Assistant Curator |
| Instructor | | Extension Specialist I | | |

*Academic rank will be granted only if the individual is appointed in an academic unit.

Non-Reappointment - Non-reappointment means that a non-tenured faculty member is not offered a next successive contract for employment at the end of a stated appointment period.  It is effected by a written notice sent in compliance with the time limits hereafter specified (IV.B.).

Probationary Period -The probationary period is the time a faculty member spends under appointments for full-time services in a tenure-track position on one campus of the University of Arkansas prior to being awarded tenure.

Promotion - Promotion is advancement based on merit to a higher rank or title.  All promotions must be approved by the Board of Trustees and become effective with the next year's appointment following action of the Board of Trustees, unless a different effective date is approved by the Board for a specific case.

Resignation - Resignation is voluntary termination of employment by an employee.  The dean or director of the unit to which the employee is assigned is authorized by the Board of Trustees to accept the resignation.

Suspension - Suspension is temporarily relieving an employee of duties.

Tenure - Tenure is the right of continuous appointment. It is awarded by the President to eligible members of the faculty upon successful completion by each of a probationary period and, once granted, it ceases to exist only by dismissal for cause according to the procedures in Section IV.C., demonstrably bona fide financial exigency, reduction or elimination of programs, retirement, or resignation. "Cause" is defined as conduct which demonstrates that the faculty member lacks the ability or willingness to perform his or her duties or to fulfill his or her responsibilities to the University; examples of such conduct include (but are not limited to) incompetence, neglect of duty, intellectual dishonesty, and moral turpitude. The probation period may be waived as provided in Section IV.A.4. NOTE: Tenured faculty holding positions eliminated by reduction or elimination of programs will be relocated in other academic units of the campus whenever possible. A position occupied by a tenured faculty member which was

EXHIBIT 1

eliminated as a result of reduction or elimination of a program may not be reactivated for a period of five academic years.

Tenure-Track Positions -Tenure-track positions are ranks of assistant professor, associate professor, professor, distinguished professor, and University professor. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, or other non-tenure-track positions approved by the President, may bear the designation of assistant professor, associate professor or professor but in no event shall be considered in tenure-track positions and shall acquire no tenure rights by virtue of occupying such positions. Such non-tenure track positions shall be set forth in applicable promotion and tenure policies approved by the President which may authorize term appointments beyond one year.

Terminal Appointment -A terminal appointment is a final appointment, the expiration of which results in termination of an individual's employment.

Termination - Termination is the general term to describe severance of employment from the University. Termination may be by resignation, retirement, dismissal, non-reappointment, or expiration of appointment.

Year -Year will be either a fiscal year (July 1 through June 30 next) or an academic year (fall and spring semesters of the same fiscal year), unless otherwise designated.

II.  Appointments

The following principles shall apply to appointments to faculty positions:

A. General

Appointments shall be for a specified period of time not to exceed one fiscal year. Except for appointments to faculty positions for summer school, appointments shall not extend beyond the end of a fiscal year.

Recommendations for appointments to the faculty will be made by the departmental chairperson after consultation with the departmental faculty concerned, and subject to the approval of the dean, chief academic officer, and chief executive officer of the campus, who alone shall make the final recommendation for appointment. (See definition of appointment, Page 1.)

B. Initial Appointment

Criteria and procedures for the initial appointment of all faculty members on a campus shall be adopted by the faculty of that campus through its governance structure; the deans and chief academic officer of the campus shall have an opportunity to give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to the Chancellor of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson[1] of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor of the campus, and the President for approval.

------

[1] For the purpose of this policy, and in reference to items involving professional librarians, extension specialists, instructional development specialists, or museum curators the terms "chairperson," "administrative officer," and "administrator" refer to the director or head librarian.

EXHIBIT 1

An appropriate degree or professional experience is an essential qualification for appointment to positions at academic ranks.

Other important qualifications include experience in teaching, research, or other creative activity, and educational service either at other colleges and universities and/or in nonacademic settings.

### C. Successive Appointments

Tenured faculty members have a right to a next successive appointment except for the reasons for termination of a tenured appointment given in Section I under definition of tenure. Non-tenured faculty do not have a right to a next successive appointment, but may be offered an appointment after the expiration of a current appointment, provided it does not extend the time in probationary status beyond the limits set in Sections IV.A.4 and IV.A.11. In the event that a non-tenured faculty member is not recommended for reappointment, the procedure described in Section IV.B. shall be followed.

Criteria and procedures for successive appointments of all faculty members on a campus shall be adopted by the faculty of that campus through its governance structure; the deans and chief academic officer of the campus shall have an opportunity to give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to the Chancellor of the campus and the President for approval.  More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor of the campus, and the President for approval.

### III.  Promotion

Promotion in academic rank shall be based primarily on the accomplishments of the individual while in the most recent rank. No minimum time in rank is required before a faculty member is eligible for promotion, nor is there a maximum time an individual may remain in a given rank except as limited by Sections IV.A.4. and IV.A.11. However, individual accomplishments and potential for continued value to the University are required for promotion.

Recommendations for promotion shall originate with the chairperson, who shall inform the faculty members who are being considered for promotion and shall give them the opportunity to submit material which they believe will facilitate consideration of their competence and performance. Each campus shall provide for the inclusion of peer evaluation in the consideration of faculty nominated for promotion.

Criteria and procedures for promotion to each rank on a campus, including an appeals procedure for those desiring reconsideration of a negative recommendation, shall be adopted by the faculty of that campus through its governance structure; the deans and chief academic officer of the campus shall have an opportunity to give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to the Chancellor of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor of the campus, and the President for approval.

EXHIBIT 1

IV. Tenure, Non-reappointment, and Dismissal

A. Tenure

1. The granting of tenure implies that the individual has completed successfully his or her probationary period and has become a permanent member of the University community. As such, he or she acquires additional procedural rights in the event that dismissal proceedings may be brought against him or her.

2. Only full-time faculty with ranks of assistant professor, associate professor, professor, distinguished professor, and University professor are eligible to be awarded tenure. Faculty and other employees with the following titles are ineligible to be awarded tenure: clinical, research, adjunct, visiting, or executive in residence faculty, research associates or research assistants, graduate associates or graduate assistants, instructors, assistant instructors, and lecturers. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, or other non-tenure track positions approved by the President, although designated assistant professor, associate professor or professor, are ineligible to be awarded tenure. Academic administrators not appointed to a teaching or research unit may be awarded academic rank in addition to their administrative titles, with the concurrence of the faculty and administrative officer of the academic unit in which such rank could lead to tenure, in which case they may acquire tenure as faculty, but not as administrators. Other administrators and staff whose primary duties do not involve teaching regularly scheduled credit-hour courses, but who occasionally teach courses are not eligible for tenure and do not acquire credit for service toward tenure for such teaching activities.

3. Tenure rights apply to the area or areas of the faculty member's expertise and in the academic unit(s) in which his or her position is budgeted (examples: Department of English, UAF, not College of Arts and Sciences; School of Law, UALR; Library, UAM; Departments of Music and Education, UAPB). Tenure rights are confined to a particular campus and are not applicable on another campus of the University of Arkansas.

4. The probationary period may not extend beyond seven years, except as specifically provided herein. An initial appointment of one-half year (academic or fiscal) or less will not be included in the probationary period. If more than one-half of any year is spent in leave of absence without pay status, that year shall not apply toward the probationary period.

During the first six years of the probationary period, a tenure-track faculty member may request, for reasons set forth below, that the probationary period be suspended by one (1) year. The reasons for such a request are the same as required under the Family and Medical Leave Act of 1993 and are as follows: (a) the birth of a child to the faculty member or his spouse and its care during the first year; (b) the adoption of a child by the faculty member or placement in the faculty member's home of a foster child; (c) the care of the faculty member's spouse, child, or parent with a serious health condition; (d) the serious health condition of the faculty member.

A request to suspend the probationary period for these reasons shall first be directed in writing to the department chair for approval and must also be approved by the dean (or approved through other established administrative channels), the vice chancellor for academic affairs, the chancellor, and the president, under such procedures as the president shall approve. These procedures may include, but shall not be limited to, the manner in which the faculty member's duties and salary, if any, are determined during such year, the information which is required to

EXHIBIT 1

substantiate a request and the extent to which a faculty member's performance during such year may be considered in awarding tenure. A faculty member who has been notified that he or she will not be reappointed may not subsequently request to suspend the probationary period under this policy.

Upon the recommendation of the department chair, after consultation with the departmental faculty and with concurrence of the dean, the vice chancellor for academic affairs, and the chancellor, new appointees at the rank of associate professor, professor, distinguished professor, or university professor may be granted immediate tenure.

5.      Recommendations for tenure shall originate with the chairpersons, who shall inform the faculty members in tenure-track positions who are being considered for tenure and shall give them the opportunity to submit material which they believe will facilitate consideration of their accomplishments and potential.

6.      Criteria and procedures concerning the awarding of tenure on a campus, including an appeals procedure for those desiring reconsideration of a negative recommendation, shall be adopted by the faculty of that campus through its governance structure; the deans and chief academic officer of the campus shall have an opportunity to give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to the Chancellor of the campus and the President for approval.   More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor of the campus, and the President for approval.

7.      The President will not consider awarding tenure to a faculty member in a probationary status without the prior recommendation of the faculty member's departmental faculty, chairperson, dean, chief academic officer, and the chief executive officer of the campus concerned.

8.      A faculty or staff member, on acquiring tenure rights, shall receive a notice from the chief executive officer of the campus affirming the acquisition of such rights. No person shall lose tenure rights by acceptance of leave-of-absence or by appointment to a University of Arkansas administrative position.

9.      Tenure becomes effective at the beginning of the nine-or twelve-month appointment period following the President's action granting tenure (July 1 for twelve-month appointments, and the beginning of fall semester for nine-month appointments).

10.     Each year at the meeting at which promotions are considered by the Board of Trustees, the President shall inform the Board of the names of each person awarded tenure during the preceding twelve months, and shall indicate for each such individual the rank and date of appointment to the University faculty.

11.     An individual in a tenure-track position who was not awarded tenure with any of the first six academic year or fiscal year appointments must be evaluated as specified in Section IV.A.6. during the sixth appointment. If he or she is not approved for tenure, the seventh appointment shall be a terminal appointment.

12.     A faculty or staff member holding tenure rights may be dismissed for cause only after the procedures prescribed in Section V.C. have been followed. A tenured person notified that he or she will be so dismissed will, except in cases of moral turpitude, be given notice of dismissal

EXHIBIT 1

twelve months prior to termination of employment. This provision does not create an award of severance pay, but assumes the full performance of University responsibilities and duties assigned for the period between dismissal notice and final termination.

13.     No faculty member shall be dismissed or denied reappointment in violation of the following principles of academic freedom, but the observation of the limitations stated herein is the responsibility of each faculty or staff member. Mere expressions of opinions, however vehemently expressed and however controversial such opinions may be, shall not constitute cause for dismissal. The threat of dismissal will not be used to restrain faculty members in their exercise of academic freedom or constitutional rights.

        a.      The faculty member is entitled to full freedom in research and in the publication of results, subject to the performance of his or her other academic duties, but personal research for pecuniary return requires prior approval by the appropriate University authorities and must be in accordance with Board Policy

        b.      The faculty member is entitled to freedom in the classroom in discussing the subject of the course, but should not teach material inappropriate or unrelated to the course.

        c. The University faculty member is a citizen, a member of a learned profession, and a member of an educational community. Speaking or writing as a citizen, the faculty member is free from institutional censorship or discipline. However, as a person of learning and as a member of an educational community, the faculty member has a responsibility for awareness that the public may judge the profession and the institution by his or her utterances. Hence, faculty should at all times make an effort to be accurate, exercise good judgment and appropriate restraint, show respect for the opinions of others, and indicate that they are not spokespersons for the institution.

B. <u>Non-Reappointment</u>

These procedures apply to non-tenured faculty members who are in tenure-track positions (assistant professors, associate professors, professors, distinguished professors, and University professors) who are not offered a next successive appointment for the period following the expiration of a current appointment.  These procedures do not apply to faculty in clinical attending positions at the University of Arkansas for Medical Sciences bearing the designation of assistant professor, associate professor or professor.

The appointment of a non-tenured faculty member may be terminated effective at the end of the appointment period, at the option of either the individual or the University.

A chairperson, dean, or chief academic officer who decides not to recommend a nontenured faculty member for reappointment shall notify him or her in writing in accordance with the following schedule and shall enclose a copy of this section with the letter of non-reappointment:

        Not later than March 1 of the first year of service, if the appointment expires at the end of that year; or at least three months in advance of its termination if the appointment terminates during the first calendar year of continuous employment.

        Not later than December 15 of the second year of service, if the appointment expires at the end of that year; or at least six months in advance of its termination if an appointment terminates during the second calendar year of continuous employment.

        At least twelve months before the expiration of the terminal appointment after two or

EXHIBIT 1

more consecutive academic, fiscal, or calendar years in the institution. The terminal appointment will be for the academic or fiscal year, according to the appointment last held by the individual.

The individual, upon being notified that he or she will not be reappointed, may request an interview within ten working days after receipt of the notice, first with the dean of the school or college, or other appropriate administrators, then, if the employee requests it, within an additional five working days, with the chief academic officer of the campus. The dean of the school or college, or other administrator, and the chief academic officer jointly will, within ten working days, make the final decision on any request that the decision be reconsidered.

Department chairpersons and other employees of that campus may be requested to participate in their individual capacities in the interviews by the individual concerned, by the chief academic officer, or by the dean or other appropriate administrator.

If the individual does not request these interviews within the time limits stated above after receipt of notification of non-reappointment, the matter shall be considered closed.

C. Dismissal

This section applies to all faculty members.

1. Preliminary Proceedings

When a chairperson or dean has reason to consider a decision to dismiss a person who has tenure rights or an untenured faculty member prior to the expiration of an appointment, he or she shall discuss the matter with that person privately. After the discussion, if the decision of the chairperson or dean is to recommend dismissal, he or she shall prepare a statement of the grounds constituting the cause for dismissal and forward it through the chief academic officer to the chief executive officer on the campus, with a copy to the faculty member. If the faculty member requests it within five working days after receipt of the statement, a subcommittee of faculty members, as determined by procedures developed by each campus, shall be named by the chief executive officer to make an informal inquiry into the situation and to effect an adjustment, if possible. If no settlement is effected, the subcommittee shall determine whether, in its view, formal proceedings shall be instituted to consider the individual's dismissal, and it shall notify the individual concerned, the chief executive officer of the campus, and other appropriate administrators of its conclusion. If the subcommittee recommends that such proceedings be begun, or if the chief executive officer of the campus, after considering a recommendation of the subcommittee favorable to the individual, decides that a proceeding should be undertaken, action shall be commenced according to the procedures which follow.

2. Hearing Procedures

The formal proceedings shall be initiated by a communication addressed to the individual by the chief executive officer of the campus informing him or her of the dismissal and the grounds for it, and that, if he or she so requests, a hearing to recommend whether his or her employment by the University shall be terminated on the grounds stated, will be conducted at a specified time and place by a faculty committee constituted as described in Section 4 below. Sufficient time shall be allowed to permit the individual to prepare a defense. The individual shall be informed in detail, or by reference to published regulations, of the procedural rights to which he or she is entitled, including the right to advice of counsel.

EXHIBIT 1

The individual shall indicate whether he or she wishes a hearing and, if so, shall file with the chief executive officer of the campus within two weeks of the date of the mailing of the communication by the chief executive officer of the campus an answer to the statement of grounds for the proposed dismissal.

If the individual does not request a hearing, no further action shall be taken. Further, at the request of the individual the proceedings provided for herein may be terminated at any time after the request for a hearing on written notice to the chief executive officer of the employee's acquiescence in the dismissal. Similarly, the administration may drop dismissal proceedings at any stage.

### 3. Suspension

Suspension of the individual from normal duties or reassignment to other duties during the proceedings will occur only if an emergency exists which threatens harm to the individual, to others, or to the University. Determination of an emergency shall be made by the chief executive officer, in consultation with the President.   Such suspension shall be with pay.

### 4. Hearing Committee

The faculty of each campus shall establish a systematically rotated panel of faculty from which hearing committees can be drawn. To hear a particular case a committee, selected from the panel in accordance with campus policies, shall be composed of faculty members of departments not involved in the dismissal.

Upon receipt from the chief executive officer of the campus of a copy of the statement of grounds for dismissal, accompanied by the individual's answer thereto, the chairperson of the hearing committee shall conduct hearings and recommend a course of action as provided in Section IV.C.5.

### 5. Committee Proceedings

The committee shall proceed by considering, before the time of the hearing, the statement of grounds for dismissal already formulated and the individual's written response.

In addition to the members of the committee, only the person requesting the hearing and his or her representative, the chief executive officer of the campus and/or his or her designee, and witnesses called by the committee are permitted to attend the hearing.

Charges contained in the initially formulated statement of grounds for dismissal may be supplemented at the hearing by evidence of new events occurring after the initial communication to the individual which constitute new or additional cause for dismissal. If such supplementary charges are adduced, the committee shall provide the individual with sufficient time to prepare his or her defense.

The chief executive officer of the campus shall have the option to attend or not to attend the hearing, and he or she may designate an appropriate representative to assist in developing and presenting the case.

The committee shall determine the order of proof and shall supervise the questioning of witnesses.

The individual shall have the aid of the committee when needed in securing the attendance of witnesses. The individual or his or her representative and the chief executive officer of the

EXHIBIT 1

campus or his or her designated representative shall have the right within reasonable limits to question all witnesses who testify orally.

The committee will use its best efforts to provide an opportunity for those involved to confront all witnesses, but where this cannot be achieved despite the efforts of the hearing committee, the identity of such non-appearing witnesses, and any written evidence they may have furnished, shall be disclosed to all interested parties during the hearing.

Subject to these safeguards, written statements may, when necessary, be taken outside the hearing and reported to it. All of the evidence shall be duly recorded. Formal rules of court procedure need not be followed, but the committee shall exercise reasonable efforts to protect the rights of the parties in the reception of evidence.

### 6. Consideration by Hearing Committee

The committee shall formulate its recommendation in private, on the basis of the hearing. Before doing so, it shall give opportunity to the individual and the chief executive officer of the campus or his or her designated representative to make oral statements before it. If written arguments are desired, the committee may request them. The committee shall proceed to arrive at its recommendation promptly without having the record of the hearing transcribed when it feels that a just decision can be reached by this means; or it may await the availability of a transcript of the hearing. It shall make explicit findings with respect to each of the grounds for removal presented.

The chief executive officer of the campus and the individual shall be notified of the recommendation in writing and a copy of the record of the hearing shall be available to both parties.

A copy of the record of the hearing and the recommendations of the hearing committee shall be furnished to the President of the University for his or her decision.  The decision of the President shall be transmitted to the chief executive officer of the campus and to the individual involved.

### 7.   Consideration by Board of Trustees

If the decision of the President is appealed to the Board of Trustees, or if the Board of Trustees chooses to review the case, the President shall transmit to the Board of Trustees the full report of the hearing committee, stating its recommendation and his or her own decision. The review shall be based on the record of the previous hearing, accompanied by opportunity for argument, oral or written or both, by the principals at the hearing or by their representatives. The decision of the Board of Trustees on review shall be final. It shall be communicated to the President and through him or her to the person involved.

### V. Annual Review

An annual review of the work and status of each tenured and tenure-track faculty member shall be made on the basis of assigned duties and according to criteria and procedures required herein. Faculty not in tenure-track positions shall be evaluated by procedures adopted by each campus.

### A.   Faculty

The annual review of each faculty member shall provide the primary basis for the chairperson's recommendations relating to salary, promotion, granting of tenure, successive appointment, non-reappointment, and dismissal.   Furthermore, this review is to provide guidance and

EXHIBIT 1

assistance to all faculty in their professional development and academic responsibilities in the areas of teaching, scholarly and creative activity, and service.

Criteria and procedures for an annual review of all tenured and tenure-track faculty on a campus shall be adopted by the faculty of that campus through its governance structure; the deans and chief academic officer of the campus shall have an opportunity to give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to the Chancellor of the campus and the President for approval. More detailed criteria and procedures may be recommended by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor of the campus, and the President for approval. All procedures for annual reviews adopted by a campus shall include provision for and details for implementation of the following:

1.      Within a reasonable time after the beginning of the first appointment of each faculty member: written notification to the faculty member of the criteria, procedures, and instruments currently in use in assessing performance;

2.      Within a reasonable time after the beginning of each academic year: written notification to each faculty member of that year's assignments, review schedule, and the criteria, procedures, and instruments to be used that year;

3.      Reasonable opportunity for each faculty member to submit any material desired to be considered in the annual review;

4.      Peer evaluation;

5.      Student evaluation of teaching;

6.      Prior to the chairperson's making a recommendation in any year: (a) a meeting between the chairperson and faculty member to discuss all issues relating to the review, (b) the providing to that faculty member a copy of the chairperson's tentative recommendation(s), and (c) reasonable opportunity for the faculty member to submit a written response to be forwarded to each subsequent level of review;

7.      As long as a faculty member is employed by the University and for at least three years thereafter: maintenance of annual review forms, summaries of annual discussions between the chairperson and faculty member, recommendations, and all other writings used in or resulting from the annual reviews of that faculty member;

8.      Availability to each faculty member of all writings used in or resulting from the annual reviews of that faculty member.

Each year the chief academic officer of each campus shall (a) require of each chairperson an assessment of the performance of all faculty members in the academic unit, including an identification of all faculty development needs and of all problems in performance of faculty, (b) take steps designed to insure compliance on that campus with all criteria and procedures for annual reviews, and (c) provide the Chancellor with a written report indicating the extent of compliance during the past year, as well as any needs and problems identified and solutions planned.

NOTE:      A University-wide committee has been established for the purpose of recommending criteria and procedures for an annual review of all administrative officers of the University. A report from this committee will be presented to the Board of Trustees

EXHIBIT 1

at a fall 1989 meeting for appropriate action of the Board.

The annual review of each administrative officer shall serve as the basis for decisions relating to salary and continuation as an administrator.   Furthermore, this review is to provide guidance and assistance to all administrative officers in their professional development.

EXHIBIT 1

BOARD POLICY 405.1

APPOINTMENTS, PROMOTION, TENURE, NON-REAPPOINTMENT, AND DISMISSAL OF FACULTY[1]

This policy supersedes all existing policies concerning appointments, promotion, tenure, non- reappointment, and dismissal of faculty. The Board of Trustees has the right to amend any portion of this policy at any time in the future.

This policy shall be included without change or inter-lineation in the Faculty Handbook for each campus.

To the extent any provision in this policy conflicts with a campus policy, this policy shall control.

I.  Definition of Terms

For purposes of this policy, the following definitions shall apply:

Appointment - An appointment is a written notice ("Notice of Appointment") that initiates the employment relationship between the Board of Trustees and the faculty member. An appointment is valid only when approved and signed by the President of the University, the Chancellor of the respective campus, the Vice President for Agriculture, the Chief Executive Officer of the respective unit, or their designee, in accordance with authority delegated by the Board of Trustees. Such appointment is subject to all applicable policies of the Board of Trustees, the University of Arkansas System, and the respective campus, division or unit.

Cause - Cause is defined as conduct that demonstrates the faculty member lacks the willingness or ability to perform duties or responsibilities to the University, or that otherwise serves as a basis for disciplinary action. Pursuant to procedures set out herein or in other University or campus policies, a faculty member may be disciplined or dismissed for cause on grounds including, but not limited to, (1) unsatisfactory performance, consistent with the requirements of section V.A.9 below, concerning annual reviews;[2] (2) professional dishonesty or plagiarism; (3) discrimination, including

---

[1]  In most cases, academic units are organized into colleges and departments with deans, chairpersons, and faculty. The normal order is for appointment, promotion and tenure processes to utilize this structure in making recommendations. Where colleges or departments are not present, the normal order shall follow a pattern that closely mirrors the typical structure. For example, in schools without departments, the recommendations shall start with the faculty and move to the director, if applicable, and then to the dean. For the purpose of this policy, and in reference to items involving professional librarians, instructional development specialists, or museum curators, the terms "chairperson," "administrative officer," and "administrator" refer to the director or head librarian. Throughout this policy, any reference to "chairperson" includes any equivalent position.

[2]  Each campus shall include criteria and procedures for determining "Unsatisfactory performance" in their campus policies governing faculty annual reviews. In order for a tenured faculty member to be dismissed for unsatisfactory performance, the requirements set out in V.A.9 as well as any corresponding campus policy must first be followed.

EXHIBIT 2

harassment or retaliation, prohibited by law or university policy; (4) unethical conduct related to fitness to engage in teaching, research, service/outreach and/or administration, or otherwise related to the faculty member's employment or public employment; (5) misuse of appointment or authority to exploit others; (6) theft or intentional misuse of property; (7) incompetence or a mental incapacity that prevents a faculty member from fulfilling his or her job responsibilities; (8) job abandonment; (9) a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment[3]; (10) refusal to perform reasonable duties; (11) threats or acts of violence  or retaliatory conduct; or (12) violation of University policy, or state or federal law, substantially related to performance of faculty responsibilities or fitness to serve the University. Nothing in this provision is intended to inhibit expression that is protected under principles of academic freedom, or state or federal law.

<u>Dismissal</u> - Dismissal is severance from employment for cause after administrative due process as provided in this policy and Board of Trustees Policy 405.4. Termination by notice, expiration of appointment, or non-reappointment, or due to job abandonment, is not a dismissal.

<u>Faculty</u> - Faculty are employees who hold academic rank of lecturer, master lecturer, instructor, advanced instructor, senior instructor, assistant professor, associate professor, professor, University professor, distinguished professor or one of the above titles modified by clinical, research, teaching, adjunct, visiting, executive in residence, professor of practice, (e.g., clinical professor or adjunct assistant professor). Additional appropriate non-tenure track modifiers may be approved by the President. For the purposes of tenure and promotion policy and recommendations, a campus may define which faculty may participate in tenure and promotion related decisions. For example, institutions that offer tenure could limit for tenure and promotion matters the definition of faculty to tenured and tenured track faculty.

Individuals holding certain non-teaching titles (i.e. Director of Libraries, Instructional Development Specialist II, and Curator) also receive faculty rank. The rank that corresponds with each title is reflected in the chart below. Both the title and the academic rank will be stated in the appointment.

---

[3]       This need not be a separate component in the evaluation criteria of faculty, but may be considered in evaluating faculty in the areas of teaching, research and service. Subject to Section V, the criteria and procedures for annual reviews shall be developed and adopted by each campus.

EXHIBIT 2

| Instructional and Research Ranks | Library | 1890 Extension Service* | Instructional Development | Museum |
|---|---|---|---|---|
| Professor, University Professor, Distinguished Professor | Director of Libraries, Librarian | Extension Specialist IV | Instructional Development Specialist II | Curator |
| Associate Professor | Associate Librarian | Extension Specialist III | Instructional Development Specialist I | Associate Curator |
| Assistant Professor | Assistant Librarian | Extension Specialist II | | Assistant Curator |
| Instructor | | Extension Specialist I | | |

*Academic rank will be granted only if the individual is appointed in an academic unit.

Non-Reappointment - Non-reappointment means that a non-tenured, tenure-track faculty member is not offered a next successive appointment for employment at the end of a stated appointment period. It is effected by a written notice sent in compliance with the time limits hereafter specified (IV.B.). This provision and the time limits specified in IV. B. do not apply to the non-renewal of an appointment of a non-tenure-track faculty member.

Probationary Period - The probationary period is the time a faculty member spends under appointments for full-time services in a tenure-track position on one campus of the University of Arkansas prior to being awarded tenure.

Promotion - Promotion is advancement based on merit to a higher rank or title. All promotions must be approved by the Board of Trustees and become effective with the next year's appointment following action of the Board of Trustees, unless a different effective date is approved by the Board.

Resignation - Resignation is voluntary termination of employment by an employee. The dean or director of the unit to which the employee is assigned is authorized by the Board of Trustees to accept the resignation.

Suspension - Suspension is temporarily relieving an employee of duties. A disciplinary suspension or suspension pending an investigation does not alter the nature of an individual's appointment. Suspension may be with or without pay as warranted by the circumstances. If a faculty member is suspended as a disciplinary measure, the faculty member may grieve or appeal the suspension in accordance with the policies of the campus, division or unit.

EXHIBIT 2

Tenure - Tenure is the right of continuous appointment, awarded by the President to eligible members of the faculty upon successful completion by each of a probationary period. Once granted, tenure ceases to exist only by (1) dismissal for cause, as defined in section 1 and according to the procedures set forth in Section IV.C., (2) demonstrably bona fide financial exigency, (3) reduction or elimination of programs, (4) retirement, (5) resignation, or (6) job abandonment. The probationary period may be waived as provided in Section IV.A.4. Salaries for tenured faculty may be adjusted for disciplinary reasons, or based on material changes in job duties or funding sources.[4] NOTE: Tenured faculty holding positions eliminated by reduction or elimination of programs will be relocated in other academic units of the campus for which they are qualified whenever possible. A position occupied by a tenured faculty member that was eliminated as a result of reduction or elimination of a program may not be reactivated for a period of five academic years.

Tenure-Track and Non-Tenure-Track Positions - Tenure-track positions are ranks of assistant professor, associate professor, professor, University professor, and distinguished professor. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, faculty positions designated as clinical positions[5] at other campuses, or other non-tenure-track positions approved by the President, may bear the designation of assistant professor, associate professor, professor, University professor or distinguished professor[6] but in no event shall be considered tenure-track positions and shall acquire no tenure rights by virtue of occupying such positions. Such non-tenure- track positions shall be set forth in applicable promotion and tenure policies approved by the President, following review by the Office of General Counsel; such policies may authorize term appointments beyond one year, but not to exceed five years, under merit- based campus procedures approved by the President. Salaries for non-tenured faculty may be adjusted for disciplinary reasons, or based on material changes in job duties or funding sources.[7]

Terminal Appointment - A terminal appointment is a final appointment, the expiration of which results in termination of an individual's employment.

Termination - Termination is the general term to describe severance of employment from the University. Termination may be by resignation, retirement, dismissal, written notice, non-reappointment, expiration of appointment, or job abandonment.

Year - Year will be either a fiscal year (July 1 through June 30 next) or an academic year (fall and

---

[4]     Subject to all University policies, any salary reduction for tenured faculty must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.

[5]     When a faculty member who holds a tenure-track position teaches in a clinical setting, the faculty member is not holding a "clinical position" for purposes of this provision.

[6]     Solely at those institutions that do not offer tenure, the rank of University or distinguished professor may be awarded to non-tenured faculty who otherwise meet the qualifications for the rank as set out in Board Policy 470.1.

[7]     Subject to all University policies, any salary reduction for tenure-track faculty or faculty with merit-based term appointments must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.

EXHIBIT 2

spring semesters of the same fiscal year), unless otherwise designated.

II.   Appointments.

A.   Faculty. The following principles shall apply to appointments to faculty positions:

1.   General

Appointments shall not exceed one academic or fiscal year except in the following limited circumstances: (1) term appointments beyond one year for non-tenure track faculty under merit-based procedures specifically established for that purpose as permitted in Section I (Tenure-Track and Non-Tenure Track Positions); or (2) appointments to faculty positions for summer school.

Recommendations for appointments to the faculty will be made by the departmental chairperson or equivalent after consultation with the faculty concerned, and are subject to the approval of the dean, the chief academic officer, and the chief executive officer of the campus. (See definition of appointment, Section I.)

Criteria and procedures for the initial appointment and successive appointment of all faculty members on a campus shall be adopted by each campus. As a general practice, the faculty, through its governance structure, will initiate the process, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus will then have an opportunity to give their advice regarding these criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

2.   Initial Appointment

An appropriate degree or professional experience is an essential qualification for appointment to positions at academic ranks.

Other important qualifications include experience in teaching, research, or other creative activity, and educational service at other colleges and universities or in non- academic settings.

3.   Successive Appointments

Tenured faculty members have a right to a next successive appointment except for the reasons for termination of a tenured appointment given in Section I under definition of tenure. Salaries for tenured faculty may be adjusted for disciplinary reasons, or based on materials changes

EXHIBIT 2

in job duties or funding sources.[8]  Non-tenured faculty do not have a right to a next successive appointment, but may be offered an appointment after the expiration of a current appointment, provided that, in the case of tenure-track faculty, the appointment does not extend the time in probationary status beyond the limits set in Sections IV.A.4 and IV.A.12. In the event that a non-tenured, tenure-track faculty member is not recommended for reappointment, the procedure described in Section IV.B. shall be followed. Non-tenure-track faculty with a term appointment for a specified term of years do not have a right to an appointment beyond the appointment period.[9]

B.   Administrative Appointments

Consistent with longstanding policy and practice, appointments as dean are made by the chief executive officer or chief academic officer of the campus. Deans serve at the pleasure of the chief executive officer or chief academic officer. Appointments as department head or chair, or as director of an academic program or center, are made by the dean, in consultation with the chief executive officer or chief academic officer, and serve at the pleasure of the dean. Additional criteria or procedures relating to the making of such appointments may be adopted by the campus, but must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Tenure may only be granted in faculty status and not in an administrative appointment.

III.   Promotion

Promotion in academic rank shall be based primarily on the accomplishments of the individual while in the most recent rank.  No minimum time in rank is required before a faculty member is eligible for promotion, nor is there a maximum time an individual may remain in a given rank except as limited by Sections IV.A.4. and IV.A.12. However, individual accomplishments and potential for continued value to the University are required for promotion. Effective July 1, 2018, no faculty member in a tenure-track position shall be promoted to the rank of associate professor or higher without also being granted tenure. (This does not preclude a faculty member from being hired into a tenure-track position with the rank of associate professor or full professor if they satisfy the applicable criteria.)

Generally, recommendations for promotion shall originate with the chairperson, but may be initiated in accordance with departmental, unit, or campus rules, which have been submitted to the dean, chief academic officer, Chancellor (or chief executive officer) and President for approval. Faculty members who are being considered for promotion shall be given the opportunity to submit relevant material regarding their professional accomplishments, which they believe will facilitate consideration of their competence and  performance. Each campus shall provide for the inclusion of peer[10] evaluation

---

[8]     Subject to all University policies, any salary reduction for tenured faculty must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.

[9]     Subject to all University policies, nothing in this provision precludes a non-tenure-track faculty member, with a merit based, multi-year term appointment, from having a rolling appointment.

[10]     "Peer" shall be defined by each campus as part of its policies governing promotion and tenure or

EXHIBIT 2

in the consideration of faculty nominated for promotion.

Criteria and procedures for promotion to each rank on a campus, including an appeals procedure for those desiring reconsideration of a negative recommendation, shall be adopted by each campus. As a general practice, the faculty, through its governance structure, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer). The deans and chief academic officer of the campus will then have an opportunity to give their advice regarding the criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the Presidentfor approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

In addition to any criteria established by the campus concerning research, teaching and service, all candidates for promotion and tenure are expected to be in substantial compliance with applicable University policies and legal requirements.

IV.   Tenure, Non-reappointment, and Dismissal

A.   Tenure

1.   The granting of tenure implies that the individual has completed successfully his or her probationary period and has become a permanent member of the University community. As such, he or she acquires additional procedural rights in the event that dismissal proceedings may be brought against him or her.

2.   Only full-time faculty with ranks of associate professor, professor, University professor, and distinguished professor are eligible to be awarded tenure. An assistant professor is eligible to seek tenure accompanied by a concurrent promotion to associate professor. Faculty and other employees with the following titles are ineligible to be awarded tenure: clinical, research, teaching, adjunct, visiting, professor of practice or executive in residence faculty, research associates or research assistants, graduate associates or graduate assistants, instructors, advanced instructors, senior instructors, lecturers, and master lecturers. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, other faculty positions designated as clinical positions, or other non- tenure track positions approved by the President, although designated assistant professor, associate professor or professor, are ineligible to be awarded tenure. Academic administrators not appointed to a teaching or research unit may be awarded academic rank in addition to their administrative titles, with the concurrence of the faculty and administrative officer of the academic unit in which such rank could lead to tenure, in which case they may acquire tenure as faculty, but

faculty annual reviews.

EXHIBIT 2

not as administrators.  Other administrators and staff whose primary duties do not involve teaching regularly scheduled credit-hour courses, but who occasionally teach courses, are not eligible for tenure and do not acquire credit for service toward tenure for such teaching activities.

3.      Tenure rights apply to the area or areas of the faculty member's expertise and in the academic unit(s) in which his or her position is budgeted (examples: Department of English (not College of Arts and Sciences), UAF; School of Law, UALR; Library, UAM; Departments of Music and Education, UAPB). Tenure rights are confined to a particular campus and are not applicable on another campus of the University of Arkansas. Tenure and tenure rights are not awarded in a named or endowed chair or professorship or in any administrative appointment.

4.      The probationary period may not extend beyond seven years, except as specifically provided herein, or as otherwise required by law. An initial appointment of one-half year (academic or fiscal) or less will not be included in the probationary period. If more than one-half of any year is spent in approved leave of absence without pay status, that year shall not apply toward the probationary period.

During the first six years of the probationary period, a tenure-track faculty member may request, for reasons set forth below, that the probationary period be suspended by one (1) year. The reasons for such a request will generally be the same as required under the Family and Medical Leave Act (FMLA), as amended, and are as follows: (a) the birth of a child to the faculty member or spouse and the child's care during the first year; (b) the adoption of a child by the faculty member or placement in the faculty member's home of a foster child within the first year of placement; (c) the care of the faculty member's spouse, child, or parent with a serious health condition; (d) the serious health condition of the faculty member that makes the faculty member unable to perform the functions of his or her job; (e) a qualifying exigency arising from the military deployment of an employee's spouse, son, daughter, or parent to a foreign country; (f) to care for a covered service member with a serious injury or illness if the employee is the spouse, son, daughter, parent, or next of kin of the service member.

On the rare occasion that an additional one-year extension is requested, such requests will be considered on a case-by-case basis. However, the faculty member will receive any leave to which he or she is entitled under the FMLA.

A request to suspend the probationary period for these reasons must be made at the time of the qualifying event and shall first be directed in writing to the department chair for approval and must also be approved by the dean (or approved through other established administrative channels), the vice chancellor for academic affairs, the Chancellor (or chief executive officer) of the campus, and the president, under such procedures as the president shall approve. These procedures may include, but shall not be limited to, the manner in which the faculty member's duties and salary, if any, are

EXHIBIT 2

determined during such year, the information which is required to substantiate a request and the extent to which a faculty member's performance during such year may be considered in awarding tenure. A faculty member who has been notified that he or she will not be reappointed may not subsequently request to suspend the probationary period under this policy.

5.     Upon the recommendation of the department chair[11], after consultation with the departmental faculty and with concurrence of the dean, the vice chancellor for academic affairs, and the Chancellor (or the chief executive officer), new appointees at the rank of associate professor, professor, University professor, or distinguished professor, who possess the requisite qualifications, may be granted immediate tenure. Immediate faculty tenure may also be granted, under this same procedure, in connection with the hiring of senior leadership positions.

6.     Generally, recommendations for tenure shall originate with the chairpersons, but may be initiated as provided for in departmental, unit or campus rules, which have been submitted to the dean, chief academic officer, Chancellor (or chief executive officer) and President for approval. Faculty members who are in tenure-track positions who are being considered for tenure shall be given the opportunity to submit relevant material documenting his or her professional performance which they believe will facilitate consideration of their accomplishments and potential.

7.     Criteria and procedures concerning the awarding of tenure on a campus, including an appeals procedure for those desiring reconsideration of a negative recommendation, shall be adopted by each campus. As a general practice, the faculty, through its governance structure, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus will then have an opportunity to give their advice regarding these criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor or chief executive officer of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

8.     The President will not consider awarding tenure to a faculty member in a probationary status without obtaining the prior recommendation of the faculty member's departmental faculty, chairperson, dean, chief academic officer, and the Chancellor (or chief executive officer) of the campus concerned..

9.     A faculty member, on attaining tenure, shall receive a notice from the chief executive

---

[11]     In Schools without departments and department chairs, refer to footnote 1.

EXHIBIT 2

officer of the campus affirming the acquisition of such rights. No person shall lose tenure rights by acceptance of leave-of-absence approved pursuant to University policy, or by appointment to a University of Arkansas administrative position.

10.    Tenure becomes effective at the beginning of the nine- or twelve-month appointment period following the President's action granting tenure (July 1 for twelve-month appointments, and the beginning of fall semester for nine-month appointments).

11.    Each year at the meeting at which promotions are considered by the Board of Trustees, the President shall inform the Board of the names of each person awarded tenure during the preceding twelve months, and shall indicate for each such individual the recommended rank for promotion and the faculty member's academic discipline.

12.    Subject to any extension of the probationary period under IV.A.4, an individual in a tenure-track position who was not awarded tenure with any of the first six academic year or fiscal year appointments must be evaluated as specified in Section IV.A.6 and 7 during the sixth appointment. If he or she is not approved for tenure, the seventh appointment shall be a terminal appointment and the individual may not be considered for tenure during the seventh appointment.

13.    A faculty member holding tenure rights may be dismissed for cause only after the procedures prescribed in Section IV.C. have been followed. Provided the requirements set out in V.B.9 as well as any corresponding campus policy have been satisfied, a tenured person notified of dismissal for reasons of unsatisfactory performance will be given notice of dismissal twelve months prior to termination of employment. Dismissal on other grounds may be immediate (if the dismissal is not contested by the faculty member) or upon the conclusion of any procedures prescribed in Section IV.C. This provision does not create an award of severance pay, but assumes the full performance of University responsibilities and duties assigned for the period between dismissal notice and final termination. Termination of a faculty member's employment because the faculty member has abandoned his or her job duties, or because the faculty member has accepted another position, shall not constitute dismissal under this policy.

14.    No faculty member shall be dismissed, or otherwise disciplined, or denied reappointment in violation of the following principles of academic freedom, but the observation of the limitations stated herein is the responsibility of each faculty or staff member. Subject to all provisions of this and other applicable University policies, mere expressions of opinions related to the faculty member's scholarship, the subject matter of their assigned teaching duties, and University employment-related service activities (e.g. committee assignments and campus governance activities), however vehemently expressed and however controversial such opinions may be, shall not constitute cause for dismissal. The threat of dismissal will not be used to restrain faculty members in their exercise of academic freedom or constitutional rights.

EXHIBIT 2

a.  The faculty member is entitled to full freedom in research and in the publication of results, subject to the performance of his or her other academic duties, but personal research for pecuniary return requires prior approval by the appropriate University authorities and must be in accordance with Board Policy 450.1.

b.  The faculty member is entitled to freedom in the classroom in discussing the subject of the course, but should not teach material inappropriate or unrelated to the course, and should maintain a respectful and professional academic learning environment.

c.  The University faculty member is a citizen, a member of a learned profession, and a member of an educational community. Speaking or writing as a citizen, the faculty member is free from institutional censorship or discipline. However, as a person of learning and as a member of an educational community, the faculty member has a responsibility for awareness that the public may judge the profession and the institution by his or her utterances. Hence, faculty should at all times make an effort to be accurate, exercise good judgment and appropriate restraint, show respect for the opinions of others, and indicate that they are not spokespersons for the institution. Faculty are expected to contribute to the productive and efficient operation of the instructional and work environment.

B.  <u>Non-Reappointment</u>

These procedures apply to non-tenured faculty members who are in tenure-track positions who are not offered a next successive appointment for the period following the expiration of a current appointment. These procedures do not apply to faculty in clinical attending positions at the University of Arkansas for Medical Sciences bearing the designation of assistant professor, associate professor or professor, other clinical faculty, or other non-tenure-track faculty.

The appointment of a non-tenured, tenure-track faculty member may be terminated effective at the end of the appointment period, at the option of either the individual or the University.

A chairperson, dean, or chief academic officer who decides not to recommend a non- tenured, tenure-track faculty member for reappointment shall notify him or her in writing in accordance with the following schedule and shall enclose a copy of this section with the letter of non-reappointment:

For the first year of service, not later than March 1, if the appointment expires at the end of that academic year; or at least three months in advance of its termination if the appointment expires at some other time during the year.

For the second year of service, not later than December 15, if the appointment expires at the end of that academic year; or at least six months in advance of its termination if an appointment expires at some other time during the year.

EXHIBIT 2

After the second year of service, at least twelve months before the expiration of the terminal appointment.  The terminal appointment will be for the academic or fiscal year, according to the appointment last held by the individual.

The individual, upon being notified that he or she will not be reappointed, may request, within ten working days after receipt of the notice, a meeting with the dean of the school or college, or other appropriate administrators. The meeting shall be held within five working days or as soon as practical thereafter. Following the meeting with the dean, if the dean reaffirms the recommendation of non-reappointment, within five working days the employee may request a meeting with the chief academic officer of the campus.[12] Within ten working days following the meeting with the chief academic officer, or as soon as possible thereafter, the chief academic officer will make the final decision on any request that the non-reappointment be reconsidered.

In considering the matter, the dean and chief academic officer may consult with other University employees with relevant knowledge regarding the individual's performance. If the individual does not request these interviews within the time limits stated above after receipt of notification of non-reappointment, the matter shall be considered  closed.

C.    Dismissal

This section applies to all tenure-track or tenured faculty members. Dismissal of non- tenure-track faculty and other personnel is addressed in Board of Trustees Policy 405.4.

1.    Preliminary Proceedings

a.    Except in circumstances where there are personal safety concerns and consistent with applicable law, when a chairperson or dean has reason to consider a decision to dismiss a tenured or tenure-track faculty member prior to the expiration of an appointment, the chairperson or dean shall first discuss the matter with the faculty member privately. After the discussion, if the decision of the chairperson or dean is to recommend dismissal, he or she shall prepare a statement of the grounds constituting the cause for dismissal and forward it through the chief academic officer[13] to the chief executive officer on the campus, with a copy to the faculty member. If there are personal safety concerns, the private meeting can be bypassed and the chairperson or dean can proceed with providing the statement of grounds for dismissal through the chief academic officer to the chief executive officer on campus, with a copy to the faculty member. If the chief executive officer of the campus, after considering the recommendation of the chairperson or dean, decides that a proceeding

---

[12]    For purposes of the Clinton School of Public Service, the employee may request a meeting with the Vice President of Academic Affairs.

[13]    For purposes of the Clinton School of Public Service, the statement of grounds shall go directly to chief executive officer of the campus, with a copy to the faculty member.

EXHIBIT 2

should be undertaken, action shall be commenced according to the procedures which follow.

b.     If requested by either party, or if directed by the chief executive officer of the campus, prior to further steps in the process, the parties shall engage in informal discussions to determine whether an acceptable resolution of the matter is possible. Such discussions may include assistance of one or more faculty selected for this purpose.

2.    <u>Hearing Procedures</u>

The formal proceedings shall be initiated by a communication addressed to the individual by the chief executive officer of the campus informing him or her of the dismissal and the grounds for it, and that, if he or she so requests, a hearing to recommend whether his or her employment by the University shall be terminated on the grounds stated, will be conducted at a specified time and place by a faculty committee constituted as described in Section 4 below. Sufficient time shall be allowed to permit the individual to prepare a defense. The individual shall be informed in detail, or by reference to published regulations, of the procedural rights to which he or she is entitled, including the right to advice of counsel.

The individual shall indicate whether he or she wishes a hearing and, if so, shall file with the chief executive officer of the campus within two weeks of the date of the mailing of the communication by the chief executive officer of the campus an answer to the statement of grounds for the proposed dismissal.

If the individual does not request a hearing, no further action shall be taken. Further, at the request of the individual the proceedings provided for herein may be terminated at any time after the request for a hearing on written notice to the chief executive officer of the employee's acquiescence in the dismissal. Similarly, the administration may drop dismissal proceedings at any stage.

3.    <u>Suspension Pending Dismissal Proceedings</u>

Suspension of the individual from normal duties or reassignment to other duties during the proceedings will occur only if circumstances exist which threaten harm or substantial disruption to the individual, to others, or to the University. Such determination shall be made by the chief executive officer, in consultation with the President. Such suspension shall be with pay. This provision does not preclude disciplinary suspension without pay.

4.    <u>Hearing Committee</u>

The faculty of each campus shall establish a systematically rotated panel of faculty from which hearing committees can be drawn. To hear a particular case a committee,

EXHIBIT 2

selected from the panel in accordance with campus policies, shall be composed of faculty members of departments not involved in the dismissal.

Upon receipt from the chief executive officer of the campus of a copy of the statement of grounds for dismissal, accompanied by the individual's answer thereto, the chairperson of the hearing committee shall conduct hearings and recommend a course of action as provided in Section IV.C.5.

5.    Committee Proceedings

The committee shall proceed by considering, before the time of the hearing, the statement of grounds for dismissal already formulated and the individual's written response.

In addition to the members of the committee, only the person requesting the hearing and his or her representative, the chief executive officer of the campus or his or her designee, and a representative, and witnesses called by the committee are permitted to attend the hearing.

Charges contained in the initially formulated statement of grounds for dismissal may be supplemented at the hearing by evidence of new events occurring after the initial communication to the individual which constitute new or additional cause for dismissal. If such supplementary grounds are adduced, the committee shall provide the individual with sufficient time to prepare his or her defense.

The chief executive officer of the campus shall have the option to attend or not to attend the hearing, and he or she may select a designee to assist in developing and presenting the case. The chief executive officer or designee may be assisted by the representative in developing and presenting the case and in other matters related to the hearing.

The committee shall determine the order of proof and shall supervise the questioning of witnesses. The committee may decline to accept unnecessarily duplicative material or unduly lengthy or repetitive testimony.

The individual shall have the aid of the committee when needed in securing the attendance of witnesses. The individual or his or her representative and the chief executive officer of the campus (or designee) or his or her representative shall have the right within reasonable limits to question all witnesses who testify orally.

The committee will use its best efforts to provide an opportunity for those involved to confront all witnesses, but where this cannot be achieved despite the efforts of the hearing committee, the identity of such non-appearing witnesses, and any written evidence they may have furnished, shall be disclosed to all interested parties during the hearing.

EXHIBIT 2

Subject to these safeguards, written statements may, when necessary, be taken outside the hearing and reported to it. All of the evidence shall be duly recorded. These are not legal proceedings and formal rules of court procedure or evidence do not apply, but the committee shall exercise reasonable efforts to protect the rights of the parties in the receipt of evidence. For purposes of illustration, the proceedings shall be recorded digitally rather than via court reporter, and witnesses will not be sworn or subpoenaed. The ultimate objective of the hearing is consideration of the matter in a fair and efficient manner.

6.    Consideration by Hearing Committee

The committee shall formulate its recommendation in private, on the basis of the hearing. Before doing so, it shall give opportunity to the individual and the chief executive officer of the campus or his or her designated representative to make oral statements before it. If written arguments are desired, the committee may request them. The committee shall make its recommendation promptly, including explicit findings with respect to each of the grounds for removal presented.

The chief executive officer of the campus and the individual shall be notified of the recommendation in writing and a copy of the record of the hearing shall be available to both parties.

A copy of the record of the hearing and the recommendations of the hearing committee shall be furnished to the President of the University for his or her decision. The decision of the President shall be transmitted to the chief executive officer of the campus and to the individual involved.

7.    Consideration by Board of Trustees

If the decision of the President is appealed to the Board of Trustees, or if the Board of Trustees chooses to review the case, the President shall transmit to the Board of Trustees the full report of the hearing committee, stating its recommendation and his or her own decision. The review shall be based on the record of the previous hearing, accompanied by opportunity for argument, oral or written or both, by the principals at the hearing or by their representatives. The decision of the Board of Trustees on review shall be final. It shall be communicated to the President and through him or her to the person involved.

If the decision of the Board is that the faculty member is to be terminated, and the termination is based on unsatisfactory performance, the termination becomes effective at the conclusion of the twelve-month period from the date of the initial notice of termination. If that period has elapsed, or if the termination is based on other grounds of cause, the termination becomes effectively immediately following the Board's decision.

EXHIBIT 2

V.    Annual Review

An annual review of the work and status of each faculty member shall be made on the basis of assigned duties and according to criteria and procedures required herein. Each year the chief academic officer of each campus shall (a) require of each chairperson an assessment of the performance of all faculty members in the academic unit, including an identification of all faculty development needs and of all problems in performance of faculty, and (b) in consultation with the Chancellor (or chief executive officer), take steps designed to insure compliance on that campus with all criteria and procedures for annual reviews.

A.    Tenured and Tenure-Track Faculty

Provided a faculty member is in substantial compliance with applicable University policies and legal requirements, the annual review of each faculty member shall provide the primary basis for the chairperson's recommendations relating to salary, promotion, granting of tenure, successive appointment, non-reappointment, and dismissal. Furthermore, this review is to provide guidance and assistance to all faculty in their professional development and academic responsibilities in the areas of teaching, scholarly and creative activity, and service.

Criteria and procedures for an annual review of all tenured and tenure-track faculty shall be adopted by each campus. As a general practice, the faculty, through its governance structure, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus will then have an opportunity to give their advice regarding these criteria and procedures. Thereafter, the criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for approval. More detailed criteria and procedures may be recommended by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. All procedures for annual reviews adopted by a campus shall include provision for and details for implementation of the following:

1.    Within a reasonable time after the beginning of the first appointment of each faculty member: written notification to the faculty member of the criteria, procedures, and instruments currently in use in assessing performance;

2.    Within a reasonable time after the beginning of each academic year: written notification to each faculty member of that year's assignments, review schedule, and the criteria, procedures, and instruments to be used that year;

3.    Reasonable opportunity for each faculty member to submit any relevant material documenting his or her professional performance to be considered in the annual review;

4.    Peer evaluation, made fully available to the faculty member and those conducting the

EXHIBIT 2

review;

5.      Student evaluation of teaching, made fully available to the faculty member and those conducting the review;

6.      Prior to the chairperson's completion of the annual evaluation (including any recommendations based on the evaluation) in any year: (a) a meeting between the chairperson and faculty member to discuss all issues relating to the review,[14] (b) providing to that faculty member a copy of the chairperson's intended evaluation and recommendation(s), and (c) a reasonable opportunity for the faculty member to submit a written response to the annual evaluation (including any recommendations), which will to be forwarded to each subsequent level of review;

7.      As long as a faculty member is employed by the University and for at least three years thereafter: maintenance of annual review forms, recommendations, associated narratives, and all other relevant materials used in or resulting from the annual reviews of that faculty member;

8.      Availability to each faculty member of all writings used in or resulting from the annual reviews of that faculty member.

9.      In order to maintain a high quality and productive educational environment, annual review procedures adopted at the campus level must provide for prompt, meaningful and effective means of addressing unsatisfactory faculty performance. Effective July 1, 2019, campus procedures shall require that any tenured faculty member who receives an **overall** unsatisfactory performance rating[15] be placed on a remediation plan. The remediation plan shall be developed by the faculty member's academic unit in consultation with the faculty member and shall include remedial measures designed to address the overall performance deficiencies, with the expectation that carrying out the plan will lead to an **overall** satisfactory performance rating. If, in the next annual review following an **overall** unsatisfactory performance rating, the faculty member fails either to attain an **overall** satisfactory performance rating or to demonstrate meaningful progress in remediating the overall performance deficiencies, the faculty member may be issued a notice of dismissal on twelve months' notice as provided for in this policy, and subject to the procedures contained in Section IV.C.

---

[14]     In the case of a tenured faculty member who has a satisfactory performance evaluation, a faculty member can waive the meeting requirement.

[15]     As part of its criteria and procedures for annual review, each campus is responsible for establishing the criteria by which an "overall" performance rating is determined.

EXHIBIT 2

B.   Non-Tenure-Track Faculty

Faculty who are not in tenure-track positions shall be evaluated by procedures adopted by each campus. Such procedures shall provide guidance and assistance to faculty in their professional development and academic responsibilities.  To the extent applicable and as fully as practicable, the criteria referenced in V. A. (especially with regard to peer and student evaluations) should be utilized in developing such campus procedures. Any campus procedure developed must be submitted to the Chancellor (or chief executive officer) of the campus and to the President for approval.

March 29, 2018 (Revised)
October 2, 2001 (Revised)
September 18, 1998 (Revised)
August 11, 1998 (Corrected)
June 6, 1997 (Revised)
April 25, 1997 (Revised)
September 16, 1994 (Revised)
June 16, 1989 (Revised)
January 23, 1987 (Revised)
September 17, 1982 (Revised)
June 18, 1982 (Revised)
February 8, 1980 (Revised)
April 20, 1962, and Revisions

EXHIBIT 2

BOARD POLICY 405.1.

APPOINTMENTS, PROMOTION, TENURE, NON-REAPPOINTMENT, AND DISMISSAL OF FACULTY [1]

This policy adopted by the Board of Trustees on February 8, 1980, to become effective on July 1, 1980, supersedes all existing policies concerning appointments, promotion, tenure, non-reappointment, and dismissal of faculty (specifically, Administrative Memorandum No. 43, dated August 31, 1962; Universitywide Administrative Memorandum 421.1, dated December 6, 1976; Universitywide Administrative Memorandum 450.1, dated November 17, 1975; and Board Policy 405.1, dated September 1, 1962, and revised). Nevertheless, an employee of the University of Arkansas who held the rank of instructor prior to the effective date of this policy is eligible for tenure in accordance with Section II A (1-4) of Board Policy 405.1 dated September 1, 1962, and revised. The Board of Trustees has the right to amend any portion of this policy at any time in the future.

Copies of this statement of policies shall be kept by the dean of each college or school and by each department head or chairperson or other appropriate official and

This policy shall be included without change or inter-lineation in the Faculty Handbook for each campus. Care shall be taken to insure that each faculty member is familiar with its contents, and the department chairperson or other appropriate official shall supply

To the extent any provision in this policy conflicts with a copy to each new member campus policy, this policy shall control.

1. Definition of Terms.

For purposes of this policy, the following definitions shall apply.

Appointment - An appointment is employment by a written contractnotice ("Notice of Appointment") bythat initiates the employment relationship between the Board of Trustees of an individual in a given capacity for a specified time period at a stated salaryand the faculty member. An appointment is valid only when the appointment form isapproved and signed by the President of the University or, the Chancellor of the respective campus, the Vice President for Agriculture, the Chief Executive Officer of the President'srespective unit, or their designee, in accordance with authority delegated by the Board of Trustees. Such appointment is subject to all applicable policies of the Board of

---

[1] In most cases, academic units are organized into colleges and departments with deans, chairpersons, and faculty. The normal order is for appointment, promotion and tenure processes to utilize this structure in making recommendations. Where colleges or departments are not present, the normal order shall follow a pattern that closely mirrors the typical structure. For example, in schools without departments, the recommendations shall start with the faculty and move to the director, if applicable, and then to the dean. For the purpose of this policy, and in reference to items involving professional librarians, instructional development specialists, or museum curators, the terms "chairperson," "administrative officer," and "administrator" refer to the director or head librarian. Throughout this policy, any reference to "chairperson" includes any equivalent position.

EXHIBIT 3

Trustees, and the Notice of Appointment is signed by the individual being appointed and returned to the University of Arkansas System, and the specifiedrespective campus, division or unit.

Cause - Cause is defined as conduct that demonstrates the faculty member lacks the willingness or ability to perform duties or responsibilities to the University official , or that otherwise serves as a basis for disciplinary action. Pursuant to procedures set out herein or in other University or campus policies, a faculty member may be disciplined or dismissed for cause on grounds including, but not limited to, (1) unsatisfactory performance, consistent with the requirements of section V.A.9 below, concerning annual reviews;[2] (2) professional dishonesty or plagiarism; (3) discrimination, including harassment or retaliation, prohibited by law or university policy; (4) unethical conduct related to fitness to engage in teaching, research, service/outreach and/or administration, or otherwise related to the faculty member's employment or public employment; (5) misuse of appointment or authority to exploit others; (6) theft or intentional misuse of property; (7) incompetence or a mental incapacity that prevents a faculty member from fulfilling his or her job responsibilities; (8) job abandonment; (9) a pattern of conduct that is detrimental to the productive and efficient operation of the instructional or work environment[3]; (10) refusal to perform reasonable duties; (11) threats or acts of violence  or retaliatory conduct; or (12) violation of University policy, or state or federal law, substantially related to performance of faculty responsibilities or fitness to serve the University. Nothing in this provision is intended to inhibit expression that is protected under principles of academic freedom, or state or federal law.

Dismissal - Dismissal is severance from employment for cause after administrative due process as specified in Section IV-C.  Non-provided in this policy and Board of Trustees Policy 405.4. Termination by notice, expiration of appointment, or non-reappointment, or due to job abandonment, is not a dismissal (see further).

Faculty - Faculty are employees who hold academic rank of lecturer, master lecturer, assistantinstructor, advanced instructor, senior instructor, assistant professor, associate professor, professor, University professor, distinguished professor, University professor, or one of the above titles modified by clinical, research, teaching, adjunct, visiting, executive in residence, or emeritus, professor of practice, (e.g., clinical professor, or adjunct assistant professor ). Additional appropriate non-tenure track modifiers may be approved by the President. For the purposes of tenure and promotion policy and recommendations, a campus may define which faculty may participate in tenure and promotion related decisions. For example, institutions that offer tenure could limit for tenure and promotion matters the definition of faculty to tenured and tenured track faculty.

[2]   Each campus shall include criteria and procedures for determining "Unsatisfactory performance" in their campus policies governing faculty annual reviews. In order for a tenured faculty member to be dismissed for unsatisfactory performance, the requirements set out in V.A.9 as well as any corresponding campus policy must first be followed.

[3]   This need not be a separate component in the evaluation criteria of faculty, but may be considered in evaluating faculty in the areas of teaching, research and service. Subject to Section V, the criteria and procedures for annual reviews shall be developed and adopted by each campus.

EXHIBIT 3

Individuals holding the followingcertain non-teaching titles will(i.e. Director of Libraries, Instructional Development Specialist II, and Curator) also receive faculty rank, the highest. The rank forthat corresponds with each title being as indicated.is reflected in the chart below. Both the title and the academic rank will be stated in the appointment.

| Instructional and Research Ranks, | Library, | 1890 Extension Service*, | Instructional Development, | Museum, |
|---|---|---|---|---|
| Professor, University Professor, Distinguished Professor, Professor, | Director of Libraries, Librarian, | Extension Specialist IV, | Instructional Development Specialist II, | Curator, |
| Associate Professor, | Associate Librarian, | Extension Specialist III, | Instructional Development Specialist I, | Associate Curator, |
| Assistant Professor, | Assistant Librarian, | Extension Specialist II, | | Assistant Curator, |
| Instructor, | | Extension Specialist I, | | |

*Academic rank will be granted only if the individual is appointed in an academic unit.

Non-Reappointment - Non-reappointment means that a non-tenured, tenure-track faculty member is not offered a next successive contractappointment for employment at the end of a stated appointment period. It is effected by a written notice sent in compliance with the time limits hereafter specified (IV.B.). This provision and the time limits specified in IV. B. do not apply to the non-renewal of an appointment of a non-tenure-track faculty member.

Probationary Period - The probationary period is the time a faculty member spends under appointments for full-time services in a tenure-track position on one campus of the University of Arkansas prior to being awarded tenure.

Promotion - Promotion is advancement based on merit to a higher rank or title. All promotions must be approved by the Board of Trustees and become effective with the next year's appointment following action of the Board of Trustees, unless a different effective date is approved by the Board for a specific case.

Resignation - Resignation is voluntary termination of employment by an employee. The dean or director of the unit to which the employee is assigned is authorized by the Board of Trustees to accept the resignation.

EXHIBIT 3

Suspension - Suspension is temporarily relieving an employee of duties. A disciplinary suspension or suspension pending an investigation does not alter the nature of an individual's appointment. Suspension may be with or without pay as warranted by the circumstances. If a faculty member is suspended as a disciplinary measure, the faculty member may grieve or appeal the suspension in accordance with the policies of the campus, division or unit.

Tenure - Tenure is the right of continuous appointment. It is awarded by the President to eligible members of the faculty upon successful completion by each of a probationary period and, once. Once granted, ittenure ceases to exist only by (1) dismissal for cause, as defined in section 1 and according to the procedures set forth in Section IV.C., (2) demonstrably bona fide financial exigency, (3) reduction or elimination of programs, (4) retirement, or(5) resignation. "Cause" is defined as conduct which demonstrates that the faculty member lacks the ability or willingness to perform his or her duties or to fulfill his or her responsibilities to the University; examples of such conduct include (but are not limited to) incompetence, neglect of duty, intellectual dishonesty, and moral turpitude., or (6) job abandonment. The probationprobationary period may be waived as provided in Section IV.A.4. Salaries for tenured faculty may be adjusted for disciplinary reasons, or based on material changes in job duties or funding sources.[4] NOTE: Tenured faculty holding positions eliminated by reduction or elimination of programs will be relocated in other academic units of the campus for which they are qualified whenever possible. A position occupied by a tenured faculty member whichthat was eliminated as a result of reduction or elimination of a program may not be reactivated for a period of five academic years.

Tenure-Track and Non-Tenure-Track Positions - Tenure-track positions are ranks of assistant professor, associate professor, professor, University professor, and distinguished professor, and University professor. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, or other nontenurefaculty positions designated as clinical positions[5] at other campuses, or other non-tenure-track positions approved by the President, may bear the designation of assistant professor, associate professor or, professor-, University professor or distinguished professor[6] but in no event shall be considered in tenure-track positions and shall acquire no tenure rights by virtue of occupying such positions. Such non-tenure- track positions shall be set forth in applicable promotion and tenure policies approved by the President which, following review by the Office of General Counsel; such policies may authorize term appointments beyond one year-, but not to exceed five years, under merit- based campus procedures approved by the President. Salaries for non-tenured faculty may be adjusted for disciplinary reasons, or based on material changes in job

---

[4]    Subject to all University policies, any salary reduction for tenured faculty must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.
[5]    When a faculty member who holds a tenure-track position teaches in a clinical setting, the faculty member is not holding a "clinical position" for purposes of this provision.
[6]    Solely at those institutions that do not offer tenure, the rank of University or distinguished professor may be awarded to non-tenured faculty who otherwise meet the qualifications for the rank as set out in Board Policy 470.1.

---

**Formatted:** Font color: Auto, Condensed by 0.2 pt
**Formatted:** Body Text, Indent: Left: 0.5", Right: 0.02", Space After: 0 pt
**Formatted** ... [81]

**Formatted:** Font color: Auto, Condensed by 0.15 pt
**Formatted** ... [82]
**Formatted:** Body Text, Indent: Left: 0.5", Right: 0.02", Space After: 0 pt

**Formatted:** Font color: Auto, Condensed by 0.2 pt
**Formatted:** Body Text, Indent: Left: 0.5", Right: 0.02", Space After: 0 pt
**Formatted** ... [83]

**Formatted:** Font: 10 pt
**Formatted:** Body Text, Line spacing: Multiple 0.06 li

EXHIBIT 3

duties or funding sources.[7]

Terminal Appointment - A terminal appointment is a final appointment, the expiration of which results in termination of an individual's employment.

Termination - Termination is the general term to describe severance of employment from the University. Termination may be by resignation, retirement, dismissal, written notice, non-reappointment, or expiration of appointment, or job abandonment.

Year - Year will be either a fiscal year (July 1 through June 30 next) or an academic year (fall and spring semesters of the same fiscal year), unless otherwise designated.

II.   Appointments.

    A.   Faculty. The following principles shall apply to appointments to faculty positions:

        1.   General.

Appointments shall be for a specified period of time not to exceed one academic or fiscal year. Except for except in the following limited circumstances: (1) term appointments beyond one year for non-tenure track faculty under merit-based procedures specifically established for that purpose as permitted in Section I (Tenure-Track and Non-Tenure Track Positions); or (2) appointments to faculty positions for summer school. appointments shall not extend beyond the end of a fiscal year.

Recommendations for appointments to the faculty will be made by the departmental chairperson or equivalent after consultation with the departmental faculty concerned, and are subject to the approval of the dean, the chief academic officer, and the chief executive officer of the campus, who alone shall make the final recommendation for appointment. (See definition of appointment, Page 1.) Section I.)

B. Initial Appointment

Criteria and procedures for the initial appointment and successive appointment of all faculty members on a campus shall be adopted by the faculty of that each campus. As a general practice, the faculty, through its governance structure, the will initiate the process, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus shall will then have an opportunity to give their advice regarding these criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for

---

[7]   Subject to all University policies, any salary reduction for tenure-track faculty or faculty with merit-based term appointments must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.

EXHIBIT 3

approval. More detailed criteria and procedures may be adopted by the faculty and chairperson[8] of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

2.    Initial Appointment

An appropriate degree or professional experience is an essential qualification for appointment to positions at academic ranks.

Other important qualifications include experience in teaching, research, or other creative activity, and educational service either at other colleges and universities and/or in non-academicnon- academic settings.

C.

3.    Successive Appointments

Tenured faculty members have a right to a next successive appointment except for the reasons for termination of a tenured appointment given in Section I under definition of tenure. Salaries for tenured faculty may be adjusted for disciplinary reasons, or based on materials changes in job duties or funding sources.[9] Non-tenured faculty do not have a right to a next successive appointment, but may be offered an appointment after the expiration of a current appointment, provided itthat, in the case of tenure-track faculty, the appointment does not extend the time in probationary status beyond the limits set in Sections IV.A.4 and IV.A.1112. In the event that a non-tenured, tenure-track faculty member is not recommended for reappointment, the procedure described in Section IV.B. shall be followed. Non-tenure-track faculty with a term appointment for a specified term of years do not have a right to an appointment beyond the appointment period.[10]

Criteria

B.    Administrative Appointments

Consistent with longstanding policy, and procedures for successivepractice, appointments of all faculty members on a campus shall be adoptedas dean are made by the faculty of that campus through its governance structure; the deans and chief academicexecutive officer ofor chief academic officer of the campus. Deans serve at the campus shall have an opportunity to

---

[8] For the purpose of this policy, and in reference to items involving professional librarians, extension specialists, instructional development specialists, or museum curators the terms "chairperson," "administrative officer," and "administrator" refer to the director or head librarian.

[9] Subject to all University policies, any salary reduction for tenured faculty must be preceded by notice and an opportunity to appeal the proposed reduction to the chief academic officer of the campus, division or unit.

[10] Subject to all University policies, nothing in this provision precludes a non-tenure-track faculty member, with a merit based, multi-year term appointment, from having a rolling appointment.

EXHIBIT 3

give their advice regarding these criteria and procedures; these criteria and procedures must be submitted to pleasure of the Chancellor of the campus and the President for approval. More detailed criteria and procedureschief executive officer or chief academic officer. Appointments as department head or chair, or as director of an academic program or center, are made by the dean, in consultation with the chief executive officer or chief academic officer, and serve at the pleasure of the dean. Additional criteria or procedures relating to the making of such appointments may be adopted by the faculty and chairperson of each academic unit; these criteria and procedurescampus, but must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Tenure may only be granted in faculty status and not in an administrative appointment.

III.– Promotion.

Promotion in academic rank shall be based primarily on the accomplishments of the individual while in the most recent rank. No minimum time in rank is required before a faculty member is eligible for promotion, nor is there a maximum time an individual may remain in a given rank except as limited by Sections IV.A.4. and IV.A.11.12. However, individual accomplishments and potential for continued value to the University are required for promotion. Effective July 1, 2018, no faculty member in a tenure-track position shall be promoted to the rank of associate professor or higher without also being granted tenure. (This does not preclude a faculty member from being hired into a tenure-track position with the rank of associate professor or full professor if they satisfy the applicable criteria.)

Recommendations

Generally, recommendations for promotion shall originate with the chairperson, who shall inform but may be initiated in accordance with departmental, unit, or campus rules, which have been submitted to the facultydean, chief academic officer, Chancellor (or chief executive officer) and President for approval. Faculty members who are being considered for promotion and shall give thembe given the opportunity to submit relevant material regarding their professional accomplishments, which they believe will facilitate consideration of their competence and performance. Each campus shall provide for the inclusion of peer[11] evaluation in the consideration of faculty nominated for promotion.

Criteria and procedures for promotion to each rank on a campus, including an appeals procedure for those desiring reconsideration of a negative recommendation, shall be adopted by each campus. As a general practice, the faculty of that campus, through its governance structure, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer). The deans and chief academic officer of the campus shallwill then have an opportunity to give their advice regarding thesethe criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and

[11] "Peer" shall be defined by each campus as part of its policies governing promotion and tenure or faculty annual reviews.

EXHIBIT 3

the President forPresidentfor, approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

In addition to any criteria established by the campus concerning research, teaching and service, all candidates for promotion and tenure are expected to be in substantial compliance with applicable University policies and legal requirements.

IV.   Tenure, Non-reappointment, and Dismissal.

    A.   Tenure

        1.   The granting of tenure implies that the individual has completed successfully his or her probationary period and has become a permanent member of the University community. As such, he or she acquires additional procedural rights in the event that dismissal proceedings may be brought against him or her.

        2.   Only full-time faculty with ranks of assistant professor, associate professor, professor, University professor, and distinguished professor, and University professor are eligible to be awarded tenure. An assistant professor is eligible to seek tenure accompanied by a concurrent promotion to associate professor. Faculty and other employees with the following titles are ineligible to be awarded tenure: clinical, research, teaching, adjunct, visiting, professor of practice or executive in residence faculty, research associates or research assistants, graduate associates or graduate assistants, instructors, assistantadvanced instructors, and senior instructors, lecturers, and master lecturers. Faculty appointed to clinical attending positions at the University of Arkansas for Medical Sciences, other faculty positions designated as clinical positions, or other non-tenure track positions approved by the President, although designated assistant professor, associate professor or professor, are ineligible to be awarded tenure. Academic administrators not appointed to a teaching or research unit may be awarded academic rank in addition to their administrative titles, with the concurrence of the faculty and administrative officer of the academic unit in which such rank could lead to tenure, in which case they may acquire tenure as faculty, but not as administrators. Other administrators and staff whose primary duties do not involve teaching regularly scheduled credit-hour courses, but who occasionally teach courses, are not eligible for tenure and do not acquire credit for service toward tenure for such teaching activities.

        3.   Tenure rights apply to the area or areas of the faculty member's expertise and in the academic unit(s) in which his or her position is budgeted (examples: Department of English, UAF, (not College of Arts and Sciences), UAF; School of Law, UALR; Library, UAM; Departments of Music and Education, UAPB). Tenure rights are confined to a particular campus and are not applicable on another campus of the University of Arkansas. Tenure and tenure rights are not awarded in a named or endowed chair or professorship or in any administrative appointment.

        4.   The probationary period may not extend beyond seven years, except as specifically

EXHIBIT 3

provided herein-, or as otherwise required by law. An initial appointment of one-half year (academic or fiscal) or less will not be included in the probationary period. If more than one-half of any year is spent in approved leave of absence without pay status, that year, shall not apply toward the probationary period.

During the first six years of the probationary period, a tenure-track faculty member may request, for reasons set forth below, that the probationary period be suspended by one (1) year. The reasons for such a request are will generally be the same as required under the Family and Medical Leave Act of 1993 (FMLA), as amended, and are as follows: (a) the birth of a child to the faculty member or his spouse and its the child's care during the first year; (b) the adoption of a child by the faculty member or placement in the faculty member's home of a foster child within the first year of placement; (c) the care of the faculty member's spouse, child, or parent with a serious health condition; (d) the serious health condition of the faculty member- that makes the faculty member unable to perform the functions of his or her job; (e) a qualifying exigency arising from the military deployment of an employee's spouse, son, daughter, or parent to a foreign country; (f) to care for a covered service member with a serious injury or illness if the employee is the spouse, son, daughter, parent, or next of kin of the service member.

On the rare occasion that an additional one-year extension is requested, such requests will be considered on a case-by-case basis. However, the faculty member will receive any leave to which he or she is entitled under the FMLA.

A request to suspend the probationary period for these reasons must be made at the time of the qualifying event and shall first be directed in writing to the department chair for approval and must also be approved by the dean (or approved through other established administrative channels), the vice chancellor for academic affairs, the chancellor Chancellor (or chief executive officer) of the campus, and the president, under such procedures as the president shall approve. These procedures may include, but shall not be limited to, the manner in which the faculty member's duties and salary, if any, are determined during such year, the information which is required to substantiate a request and the extent to which a faculty member's performance during such year may be considered in awarding tenure. A faculty member who has been notified that he or she will not be reappointed may not subsequently request to suspend the probationary period under this policy.

5.    Upon the recommendation of the department chair[12], after consultation with the departmental faculty and with concurrence of the dean, the vice chancellor for academic affairs, and the chancellor, Chancellor (or the chief executive officer), new appointees at the rank of associate professor, professor, University professor, or distinguished professor, or university professor who possess the requisite qualifications

---

[12]   In Schools without departments and department chairs, refer to footnote 1.

EXHIBIT 3

may be granted immediate tenure. Immediate faculty tenure may also be granted, under this same procedure, in connection with the hiring of senior leadership positions.

5. Recommendations

6. Generally, recommendations for tenure shall originate with the chairpersons, who shall inform the faculty but may be initiated as provided for in departmental, unit or campus rules, which have been submitted to the dean, chief academic officer, Chancellor (or chief executive officer) and President for approval. Faculty members who are in tenure-track positions who are being considered for tenure and shall give thembe given the opportunity to submit relevant material documenting his or her professional performance which they believe will facilitate consideration of their accomplishments and potential.

7. Criteria and procedures concerning the awarding of tenure on a campus, including an appeals procedure, for those desiring reconsideration of a negative recommendation, shall be adopted by each campus. As a general practice, the faculty of that campus, through its governance structure, the, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus shallwill then have an opportunity to give their advice regarding these criteria and procedures. Thereafter, these criteria and procedures must be submitted to the Chancellor or chief executive officer of the campus and the President for approval. More detailed criteria and procedures may be adopted by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. Campus and unit criteria and procedures must be consistent with and are subject to this and other applicable University policies.

8. The President will not consider awarding tenure to a faculty member in a probationary status without obtaining the prior recommendation of the faculty member's departmental faculty, chairperson, dean, chief academic officer, and the Chancellor (or chief executive officer) of the campus concerned.

9. A faculty or staff member, on acquiringattaining tenure rights, shall receive a notice from the chief executive officer of the campus affirming the acquisition of such rights. No person shall lose tenure rights by, acceptance of leave-of-absence approved pursuant to University policy, or by appointment to a University of Arkansas administrative position.

10. Tenure becomes effective at the beginning of the nine- or twelve-month appointment period following the President's action granting tenure (July 1 for twelve-month appointments, and the beginning of fall semester for nine-month appointments).

11. Each year at the meeting at which promotions are considered by the Board of Trustees, the President shall inform the Board of the names of each person awarded tenure during the preceding twelve months, and shall indicate for each such individual the

EXHIBIT 3

recommended rank for promotion and date of appointment to the University faculty member's academic discipline.

11. An

12. Subject to any extension of the probationary period under IV.A.4, an individual in a tenure-track position who was not awarded tenure with any of the first six academic year or fiscal year appointments must be evaluated as specified in Section IV.A.6. and 7 during the sixth appointment. If he or she is not approved for tenure, the seventh appointment shall be a terminal appointment— and the individual may not be considered for tenure during the seventh appointment.

12.

13. A faculty or staff member holding tenure rights may be dismissed for cause only after the procedures prescribed in Section VIV.C. have been followed. AProvided the requirements set out in V.B.9 as well as any corresponding campus policy have been satisfied, a tenured person notified that he or sheof dismissal for reasons of unsatisfactory performance will be so dismissed will. except in cases of moral turpitude, be given notice of dismissal twelve months prior to termination of employment. Dismissal on other grounds may be immediate (if the dismissal is not contested by the faculty member) or upon the conclusion of any procedures prescribed in Section IV.C. This provision does not create an award of severance pay, but assumes the full performance of University responsibilities and duties assigned for the period between dismissal notice and final termination. Termination of a faculty member's employment because the faculty member has abandoned his or her job duties, or because the faculty member has accepted another position, shall not constitute dismissal under this policy.

13.

14. No faculty member shall be dismissed, or otherwise disciplined, or denied reappointment in violation of the following principles of academic freedom, but the observation of the limitations stated herein is the responsibility of each faculty or staff member. Mere expressions of opinions.Subject to all provisions of this and other applicable University policies, mere expressions of opinions related to the faculty member's scholarship, the subject matter of their assigned teaching duties, and University employment-related service activities (e.g. committee assignments and campus governance activities), however vehemently expressed and however controversial such opinions may be, shall not constitute cause for dismissal. The threat of dismissal will not be used to restrain faculty members in their exercise of academic freedom or constitutional rights.

a. The faculty member is entitled to full freedom in research and in the publication of results, subject to the performance of his or her other academic duties, but personal research for pecuniary return requires prior approval by the appropriate University authorities and must be in accordance with Board Policy 450.1.

b. The faculty member is entitled to freedom in the classroom in discussing the subject of the course, but should not teach material inappropriate or unrelated to the course— and should maintain a respectful and professional academic

EXHIBIT 3

learning environment.

c. The University faculty is a citizen, a member of a learned profession, and a member of an educational community. Speaking or writing as a citizen, the faculty member is free from institutional censorship or discipline. However, as a person of learning and as a member of an educational community, the faculty member has a responsibility for awareness that the public may judge the profession and the institution by his or her utterances. Hence, faculty should at all times make an effort to be accurate, exercise good judgment and appropriate restraint, show respect for the opinions of others, and indicate that they are not spokespersons for the institution. Faculty are expected to contribute to the productive and efficient operation of the instructional and work environment.

B. Non-Reappointment.

These procedures apply to non-tenured faculty members who are in tenure-track positions (assistant professors, associate professors, professors, distinguished professors, and University professors) who are not offered a next successive appointment for the period following the expiration of a current appointment. These procedures do not apply to faculty in clinical attending positions at the University of Arkansas for Medical Sciences bearing the designation of assistant professor, associate professor or professor, other clinical faculty, or other non-tenure-track faculty.

The appointment of a non-tenured, tenure-track faculty member may be terminated effective at the end of the appointment period, at the option of either the individual or the University.

A chairperson, dean, or chief academic officer who decides not to recommend a non-tenurednon- tenured, tenure-track faculty member for reappointment shall notify him or her in writing in accordance with the following schedule and shall enclose a copy of this section with the letter of non-reappointment: Not later than March 1 of

For the first year of service, not later than March 1, if the appointment expires at the end of that academic year; or at least three months in advance of its termination if the appointment terminatesexpires at some other time during the first calendar year of continuous employment. Not

For the second year of service, not later than December 15 of the second year of service, if the appointment expires at the end of that academic year; or at least six months in advance of its termination if an appointment terminatesexpires at some other time during the second calendar year of continuous employment. At

After the second year of service, at least twelve months before the expiration of the terminal appointment after two or more consecutive academic, fiscal, or calendar years in the institution. The terminal appointment will be for the academic or fiscal year, according to the appointment last held by the individual.

EXHIBIT 3

The individual, upon being notified that he or she will not be reappointed, may request ~~an interview~~ within ten working days after receipt of the notice, ~~first~~a meeting with the dean of the school or college, or other appropriate administrators ~~then, if the employee requests it,~~. The meeting shall be held within ~~an additional~~ five working days, or as soon as practical thereafter. Following the meeting with the dean, if the dean reaffirms the recommendation of non-reappointment, within five working days the employee may request a meeting with the chief academic officer of the campus.  ~~The dean of the school or college, or other administrator, and~~.[13] Within ten working days following the meeting with the chief academic officer ~~jointly will, within ten working days,~~ or as soon as possible thereafter, the chief academic officer will make the final decision on any request that the ~~decision on~~non-reappointment be reconsidered.

~~Department chairpersons and other employees of that campus may be requested to participate in their individual capacities in the interviews by the individual concerned, by the chief academic officer, or by the dean or other appropriate administrator.~~

In considering the matter, the dean and chief academic officer may consult with other University employees with relevant knowledge regarding the individual's performance. If the individual does not request these interviews within the time limits stated above after receipt of notification of non-reappointment, the matter shall be considered closed.

C.   Dismissal.

This section applies to all tenure-track or tenured faculty members. Dismissal of non- tenure-track faculty and other personnel is addressed in Board of Trustees Policy 405.4.

1.   Preliminary Proceedings.
     ~~When~~

     a.   Except in circumstances where there are personal safety concerns and consistent with applicable law, when a chairperson or dean has reason to consider a decision to dismiss a ~~person who has~~tenured or tenure ~~rights or an untenured~~-track faculty member prior to the expiration of an appointment, ~~he~~the chairperson or ~~she~~dean shall first discuss the matter with ~~that person~~the faculty member privately. After the discussion, if the decision of the chairperson or dean is to recommend dismissal, he or she shall prepare a statement of the grounds constituting the cause for dismissal and forward it through the chief academic officer[14] to the chief executive officer on the campus, with a copy to the faculty member. ~~I~~If there are personal safety concerns, the ~~faculty member~~

---

[13]   For purposes of the Clinton School of Public Service, the employee may request a meeting with the Vice President of Academic Affairs.
[14]   For purposes of the Clinton School of Public Service, the statement of grounds shall go directly to chief executive officer of the campus, with a copy to the faculty member.

EXHIBIT 3

requests it within five working days after receipt of private meeting can be bypassed and the chairperson or dean can proceed with providing the statement a subcommittee of faculty members, as determined by procedures developed by each campus, shall be named by of grounds for dismissal through the chief executiveacademic officer to make an informal inquiry into the situation and to effect an adjustment, if possible. If no settlement is effected, the subcommittee shall determine whether, in its view, formal proceedings shall be instituted to consider the individual's dismissal, and it shall notify the individual concerned, the chief executive officer of the campus, and other appropriate administrators of its conclusion. If the subcommittee recommends that such proceedings be begun, or ifon campus, with a copy to the faculty member. Ifthe chief executive officer of the campus, after considering athe recommendation of the subcommittee favorable to the individualchairperson or dean, decides that a proceeding should be undertaken, action shall be commenced according to the procedures which follow.

**Formatted** ... [140]

b.   If requested by either party, or if directed by the chief executive officer of the campus, prior to further steps in the process, the parties shall engage in informal discussions to determine whether an acceptable resolution of the matter is possible. Such discussions may include assistance of one or more faculty selected for this purpose.

2.   Hearing Procedures

**Formatted** ... [141]
**Formatted: Font color: Auto**
**Formatted: Body Text, Left, Indent: First line: 0", Right: 0.02", Space After: 0 pt**

The formal proceedings shall be initiated by a communication addressed to the individual by the chief executive officer of the campus informing him or her of the dismissal and the grounds for it, and that, if he or she so requests, a hearing to recommend whether his or her employment by the University shall be terminated on the grounds stated, will be conducted at a specified time and place by a faculty committee constituted as described in Section 4 below. Sufficient time shall be allowed to permit the individual to prepare a defense. The individual shall be informed in detail, or by reference to published regulations, of the procedural rights to which he or she is entitled, including the right to advice of counsel.

**Formatted** ... [142]

The individual shall indicate whether he or she wishes a hearing and, if so, shall file with the chief executive officer of the campus within two weeks of the date of the mailing of the communication by the chief executive officer of the campus an answer to the statement of grounds for the proposed dismissal.

**Formatted** ... [143]
**Formatted: Font color: Auto**
**Formatted: Body Text, Left, Right: 0.02", Space After: 0 pt**

If the individual does not request a hearing, no further action shall be taken. Further, at the request of the individual the proceedings provided for herein may be terminated at any time after the request for a hearing on written notice to the chief executive officer of the employee's acquiescence in the dismissal. Similarly, the administration may drop dismissal proceedings at any stage.

**Formatted: Font color: Auto, Condensed by 0.15 pt**
**Formatted: Body Text, Indent: Left: 1.5", Right: 0.02", Space After: 0 pt**
**Formatted** ... [144]
**Formatted: Font: 10 pt**
**Formatted: Body Text, Line spacing: Multiple 0.06 li**

EXHIBIT 3

3. **Suspension Pending Dismissal Proceedings**

Suspension of the individual from normal duties or reassignment to other duties during the proceedings will occur only if ~~an emergency exists~~circumstances exist which ~~threatens~~threaten harm or substantial disruption to the individual, to others, or to the University. ~~Determination of an emergency~~Such determination shall be made by the chief executive officer, in consultation with the President. Such suspension shall be with pay. This provision does not preclude disciplinary suspension without pay.

4. **Hearing Committee**

The faculty of each campus shall establish a systematically rotated panel of faculty from which hearing committees can be drawn. To hear a particular case a committee selected from the panel in accordance with campus policies, shall be composed of faculty members of departments not involved in the dismissal.

Upon receipt from the chief executive officer of the campus of a copy of the statement of grounds for dismissal, accompanied by the individual's answer thereto, the chairperson of the hearing committee shall conduct hearings and recommend a course of action as provided in Section IV.C.5.

5. **Committee Proceedings**

The committee shall proceed by considering, before the time of the hearing, the statement of grounds for dismissal already formulated and the individual's written response.

In addition to the members of the committee, only the person requesting the hearing and his or her representative, the chief executive officer of the campus ~~and/~~or his or her designee, and a representative, and witnesses called by the committee are permitted to attend the hearing.

Charges contained in the initially formulated statement of grounds for dismissal may be supplemented at the hearing by evidence of new events occurring after the initial communication to the individual which constitute new or additional cause for dismissal. If such supplementary ~~charges~~grounds are adduced, the committee shall provide the individual with sufficient time to prepare his or her defense.

The chief executive officer of the campus shall have the option to attend or not to attend the hearing, and he or she may ~~designate an appropriate representative~~select a designee to assist in developing and presenting the case. The chief executive officer or designee may be assisted by the representative in developing and presenting the case and in other matters related to the hearing.

The committee shall determine the order of proof and shall supervise the questioning

EXHIBIT 3

of witnesses. The committee may decline to accept unnecessarily duplicative material or unduly lengthy or repetitive testimony.

The individual shall have the aid of the committee when needed in securing the attendance of witnesses. The individual or his or her representative and the chief executive officer of the campus (or designee) or his or her designated representative shall have the right within reasonable limits to question all witnesses who testify orally.

The committee will use its best efforts to provide an opportunity for those involved to confront all witnesses, but where this cannot be achieved despite the efforts of the hearing committee, the identity of such non-appearing witnesses, and any written evidence they may have furnished, shall be disclosed to all interested parties during the hearing.

Subject to these safeguards, written statements may, when necessary, be taken outside the hearing and reported to it. All of the evidence shall be duly recorded. FormalThese are not legal proceedings and formal rules of court procedure needor evidence do not be followedapply, but the committee shall exercise reasonable efforts to protect the rights of the parties in the reception of evidence. receipt of evidence. For purposes of illustration, the proceedings shall be recorded digitally rather than via court reporter, and witnesses will not be sworn or subpoenaed. The ultimate objective of the hearing is consideration of the matter in a fair and efficientmanner.

6.   Consideration by Hearing Committee

The committee shall formulate its recommendation in private, on the basis of the hearing. Before doing so, it shall give opportunity to the individual and the chief executive officer of the campus or his or her designated representative to make oral statements before it. If written arguments are desired, the committee may request them. The committee shall proceed to arrive atmake its recommendation promptly without having the record of the hearing transcribed when it feels that a just decision can be reached by this means; or it may await the availability of a transcript of the hearing. It shall make, including explicit findings with respect to each of the grounds for removal presented.

The chief executive officer of the campus and the individual shall be notified of the recommendation in writing and a copy of the record of the hearing shall be available to both parties.

A copy of the record of the hearing and the recommendations of the hearing committee shall be furnished to the President of the University for his or her decision. The decision of the President shall be transmitted to the chief executive officer of the campus and to the individual involved.

7.   Consideration by Board of Trustees

EXHIBIT 3

If the decision of the President is appealed to the Board of Trustees, or if the Board of Trustees chooses to review the case, the President shall transmit to the Board of Trustees the full report of the hearing committee, stating its recommendation and his or her own decision. The review shall be based on the record of the previous hearing, accompanied by opportunity for argument, oral or written or both, by the principals at the hearing or by their representatives. The decision of the Board of Trustees on review shall be final. It shall be communicated to the President and through him or her to the person involved.

If the decision of the Board is that the faculty member is to be terminated, and the termination is based on unsatisfactory performance, the termination becomes effective at the conclusion of the twelve-month period from the date of the initial notice of termination. If that period has elapsed, or if the termination is based on other grounds of cause, the termination becomes effectively immediately following the Board's decision.

## V. Annual Review.

An annual review of the work and status of each tenured and tenure-track faculty member shall be made on the basis of assigned duties and according to criteria and procedures required herein. Faculty not in tenure-track positions shall be evaluated by procedures adopted by each campus. Each year the chief academic officer of each campus shall (a) require of each chairperson an assessment of the performance of all faculty members in the academic unit, including an identification of all faculty development needs and of all problems in performance of faculty, and (b) in consultation with the Chancellor (or chief executive officer), take steps designed to insure compliance on that campus with all criteria and procedures for annual reviews.

### A. Tenured and Tenure-Track Faculty.

The Provided a faculty member is in substantial compliance with applicable University policies and legal requirements, the annual review of each faculty member shall provide the primary basis for the chairperson's recommendations relating to salary, promotion, granting of tenure, successive appointment, non-reappointment, and dismissal. Furthermore, this review is to provide guidance and assistance to all faculty in their professional development and academic responsibilities in the areas of teaching, scholarly and creative activity, and service.

Criteria and procedures for an annual review of all tenured and tenure-track faculty on a campus shall be adopted by each campus. As a general practice, the faculty of that campus through its governance structure, will initiate the process of preparing such criteria and procedures, on its own or at the request of the Chancellor (or chief executive officer) of the campus. The deans and chief academic officer of the campus shall will then have an opportunity to give their advice regarding these criteria and procedures. these. Thereafter, the criteria and procedures must be submitted to the Chancellor (or chief executive officer) of the campus and the President for approval. More detailed criteria and procedures may be

EXHIBIT 3

recommended by the faculty and chairperson of each academic unit; these criteria and procedures must be submitted to the dean, the chief academic officer of the campus, the Chancellor (or chief executive officer) of the campus, and the President for approval. All procedures for annual reviews adopted by a campus shall include provision for and details for implementation of the following:

1. Within a reasonable time after the beginning of the first appointment of each faculty member: written notification to the faculty member of the criteria, procedures, and instruments currently in use in assessing performance;

2. Within a reasonable time after the beginning of each academic year: written notification to each faculty member of that year's assignments, review schedule, and the criteria, procedures, and instruments to be used that year;

3. Reasonable opportunity for each faculty member to submit any relevant material desired documenting his or her professional performance to be considered in the annual review;

4. Peer evaluation, made fully available to the faculty member and those conducting the review;

5. Student evaluation of teaching, made fully available to the faculty member and those conducting the review;

6. Prior to the chairperson's making a recommendation completion of the annual evaluation (including any recommendations based on the evaluation) in any year: (a) a meeting between the chairperson and faculty member to discuss all issues relating to the review (b) the [15] (b) providing to that faculty member a copy of the chairperson's tentative intended evaluation and recommendation(s), and (c) a reasonable opportunity for the faculty member to submit a written response to the annual evaluation (including any recommendations), which will be forwarded to each subsequent level of review;

7. As long as a faculty member is employed by the University and for at least three years thereafter: maintenance of annual review forms, summaries of annual discussions between the chairperson and faculty member, recommendations, associated narratives and all other writings relevant materials used in or resulting from the annual reviews of that faculty member;

8. Availability to each faculty member of all writings used in or resulting from the annual reviews of that faculty member.

---

[15]   In the case of a tenured faculty member who has a satisfactory performance evaluation, a faculty member can waive the meeting requirement.

EXHIBIT 3

Formatted: Header

~~Each year the chief academic officer of each campus shall (a) require of each chairperson an assessment of the performance of all faculty members in the academic unit, including an identification of all faculty development needs and of all problems in performance of faculty, (b) take steps designed to insure compliance on that campus with all criteria and procedures for annual reviews, and (c) provide the Chancellor with a written report indicating the extent of compliance during the past year, as well as any needs and problems identified and solutions planned.~~

~~NOTE:   A University-wide committee has been established for the purpose of recommending criteria and procedures for an annual review of all administrative officers of the University. A report from this committee will be presented to the Board of Trustees at a fall 1989 meeting for appropriate action of the Board.~~

~~The annual review of each administrative officer shall serve as the basis for decisions relating to salary and continuation as an administrator. Furthermore, this review is to provide guidance and assistance to all administrative officers in their professional development.~~

9.    In order to maintain a high quality and productive educational environment, annual review procedures adopted at the campus level must provide for prompt, meaningful and effective means of addressing unsatisfactory faculty performance. Effective July 1, 2019, campus procedures shall require that any tenured faculty member who receives an **overall** unsatisfactory performance rating[16] be placed on a remediation plan. The remediation plan shall be developed by the faculty member's academic unit in consultation with the faculty member and shall include remedial measures designed to address the overall performance deficiencies, with the expectation that carrying out the plan will lead to an **overall** satisfactory performance rating. If, in the next annual review following an **overall** unsatisfactory performance rating, the faculty member fails either to attain an **overall** satisfactory performance rating or to demonstrate meaningful progress in remediating the overall performance deficiencies, the faculty member may be issued a notice of dismissal on twelve months' notice as provided for in this policy, and subject to the procedures contained in Section IV.C.

---

[16]    As part of its criteria and procedures for annual review, each campus is responsible for establishing the criteria by which an "overall" performance rating is determined.

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing: Multiple 0.06 li

EXHIBIT 3

B.    Non-Tenure-Track Faculty

Faculty who are not in tenure-track positions shall be evaluated by procedures adopted by each campus. Such procedures shall provide guidance and assistance to faculty in their professional development and academic responsibilities.  To the extent applicable and as fully as practicable, the criteria referenced in V. A. (especially with regard to peer and student evaluations) should be utilized in developing such campus procedures. Any campus procedure developed must be submitted to the Chancellor (or chief executive officer) of the campus and to the President for approval.

March 29, 2018 (Revised)
October 2, 2001 (Revised)
September 18, 1998 (Revised)
August 11, 1998 (Corrected)
June 6, 1997 (Revised)
April 25, 1997 (Revised)
September 16, 1994 (Revised)
June 16, 1989 (Revised)
January 23, 1987 (Revised)
September 17, 1982 (Revised)
June 18, 1982 (Revised)
February 8, 1980 (Revised)
April 20, 1962, and Revisions

Formatted: Body Text, Left, Indent: Left:  0.08", Right: 0.02", Space After:  0 pt

Formatted: Font color: Auto

Formatted: Font: 10 pt

Formatted: Body Text, Line spacing:  Multiple 0.06 li

EXHIBIT 3